MELVIN D. OAKES

*v.*

WEST VIRGINIA DEPARTMENT OF
FINANCE AND ADMINISTRATION

(No. 14727)

Decided March 11, 1980.

Rehearing Denied March 27, 1980.

*Pauley, Curry & Thaxton and Arden J. Curry*, for appellant.

*Chauncey H. Browning*, Attorney General, *Ann V. Gordon*, Assistant Attorney General, for appellee.

MILLER, JUSTICE:

Melvin D. Oakes, a tenured civil service employee, appeals a final order of the West Virginia Civil Service Commission affirming his dismissal from employment. We reverse the order for the reasons herein set forth.

Mr. Oakes was employed for a number of years by the West Virginia Department of Finance and Administra-

tion. By 1965, Mr. Oakes occupied the position of postmaster of the Capitol Post Office, and held this position at the time of his dismissal in June of 1979.

His dismissal was the result of the failure of the Capitol Post Office to make a timely delivery of two pieces of registered mail to the Purchasing Division of the Department of Finance and Administration. The two pieces of mail contained bid proposals on the financing of the purchase by the State of an airplane. Apparently, the director of purchasing solicited sealed bids for the financing of the purchase of the airplane, and all such bidders were required to submit their proposals prior to the bid openings set at a specified hour on May 31, 1979.

The record of the civil service hearing demonstrates that on the morning of May 31, 1979, United States postal employees made their regular mail delivery to the Capitol Post Office, which included the two registered letters in question. The custom and practice of the Capitol Post Office had been that the mail was sorted by Capitol Post Office employees into compartments for pick-up by the various State agencies. Mr. Oakes signed receipts for all registered mail. Any registered mail addressed to the Purchasing Division was delivered to the Purchasing Division on the day of receipt by an employee of the Capitol Post Office.

There was a conflict in the testimony at the hearing on whether Mr. Oakes specifically told a subordinate employee, Timmy Keaton, to deliver these two particular registered letters to the Purchasing Division. Mr. Oakes testified that he told Mr. Keaton to deliver them; that around 10:00 a.m. on that morning he checked the table where they had been placed and they were not there; and that he, therefore, assumed they had been delivered. Mr. Keaton acknowledged that it had been customary for him to deliver registered mail to the Purchasing Division, but denied that on the morning of May 31, 1979, he had received any specific instructions to deliver these two particular pieces of registered mail.

Shortly before 5:00 p.m. on May 31, 1979, Mr. Oakes received a call from a United States postal employee in Charleston, who advised him that the two pieces of registered mail had unaccountably been returned to the federal post office. The following morning, they were returned to the Capitol Post Office and delivered to the Purchasing Division, but the bid opening had then been completed and the two bids could not be considered.

The Civil Service Commission concluded that Mr. Oakes had been dismissed for good cause on the basis that he was negligent and inefficient in the manner in which he supervised the handling of the two items of registered mail. The Commission relied upon Article XI, Section 2 of The West Virginia Civil Service System Rules and Regulations, which provides that a permanent employee "who is negligent or inefficient in his duties" may be dismissed from his position.

In *Guine v. Civil Service Commission*, 149 W.Va. 461, 141 S.E.2d 364 (1965), this Court focused on the statutory language now found in W. Va. Code, 29-6-15 (1977), requiring that a dismissal be for good cause. We concluded that "good cause" requires that a dismissal be based on "something of a substantial nature directly affecting the rights and interest of the public," rather than "trivial or inconsequential matters, or . . . mere technical violations of statute or official duty without wrongful intention." [149 W.Va. at 468, 141 S.E.2d at 369]. This same requirement was reaffirmed in *Thurmond v. Steele*, ____ W.Va. ____, 225 S.E.2d 210 (1976), and *City of Logan v. Dingess*, ____ W.Va. ____, 242 S.E.2d 473 (1978), although *Thurmond* involved derelictions that were not committed on the job, so that a somewhat higher standard was imposed to justify the dismissal.

Other courts have taken essentially the same view as *Guine*, that the dismissal of a permanent civil service employee ultimately must rest on a substantial ground of misconduct. *See, e.g., Arizona Department of Public Safety v. Dowd*, 117 Ariz. 423, 573 P.2d 497 (1977); *Skelly v. State Personnel Board*, 124 Cal. Rptr. 14, 15 Cal.3d.

194, 539 P.2d 774 (1975); *Tudor v. University Civil Service Merit Bd.*, 131 Ill. App. 2d 907, 267 N.E.2d 341 (1971); *Swezey v. State Department of Social and Rehabilitation Services*, 1 Kan. App.2d 94, 562 P.2d 117 (1977); *Hagen v. Civil Service Bd.*, 282 Minn. 296, 164 N.W.2d 629 (1969); 63 Am. Jur. 2d *Public Officers and Employees* § 202 (1972); 67 C.J.S. *Officers and Public Employees* § 120b (1978).

It should be noted that nothing in the record indicates that Mr. Oakes had a prior history of negligent or inefficient conduct in his supervision of the Capitol Post Office, nor that he had received any reprimands or been subjected to any disciplinary proceedings. There is nothing in the record to suggest that he had been alerted to the importance of any particular registered mail that was due at the Capitol Post Office. The sole alleged dereliction on his part was the failure to have delivered promptly to the Purchasing Division the two pieces of registered mail after their receipt at the Capitol Post Office on the morning of May 31, 1979.

It is apparent from the record that Mr. Oakes had subordinate employees at the Capitol Post Office. The State argues that if the subordinate "[does] not perform his duties correctly, then appellant [Oakes] can be held accountable for the inefficient performance ... of his subordinate." [Brief of Appellee at 6]. This is not an accurate statement of the law. Most courts have held that a public employee is ordinarily not chargeable with the negligent acts or omissions of his subordinate unless he participates in such acts or otherwise sanctions them. This rule is more fully stated in 67 C.J.S. *Officers & Public Employees* § 209 (1978):

> "[T]he doctrine of respondeat superior applicable to the relation of master and servant, as discussed in C.J.S. Master and Servant § 561 et seq., does not, in the absence of statute, apply to a public officer so as to render him responsible for the acts or omissions of subordinates whether or not appointed by him. The rule is based on considerations of public policy.

"A public officer may become responsible for the acts of his subordinates where, having the power of selection, he has failed to use ordinary care therein, or where he was negligent in supervising the acts of such subordinates, or was a party to the acts, or directed, authorized, ratified or encouraged the wrong or cooperated therein. Also, officers are liable to an individual for the acts of their deputies where such officers owe a duty to such individuals."

*See, e.g., Robertson v. Sichel,* 127 U.S. 507, 8 S.Ct. 1286, 32 L. Ed. 203 (1888); *Metropolitan Sanitary District v. Huston,* 9 Ill. App.3d 855, 293 N.E.2d 425 (1973); *Moores v. Fayette County,* 418 S.W.2d 412 (Ky. 1967); *Webber v. Andersen,* 187 Neb. 9, 187 N.W.2d 290 (1971); *DuBree v. Commonwealth,* 481 Pa. 540, 393 A.2d 293 (1978).

This rule of qualified liability does not permit a public employee in a supervisory position to escape the consequences of the defaults and misfeasance of his subordinates by ignoring such conduct. In his supervisory role, he has a duty to exercise reasonable care to keep himself informed of the work performance of his subordinate employees.

As previously noted, Mr. Oakes did check the mail table at around 10:00 a.m. on May 31, and the two pieces of registered mail were not there. It was not unreasonable, in light of past practice, for him to assume that they had been delivered.

It is not claimed that Mr. Oakes participated in or otherwise sanctioned the practice of late delivery of registered mail, nor that he failed to give adequate instructions to subordinate employees concerning the delivery of the registered mail. The State rather claims that a subordinate employee did not promptly deliver the two pieces of registered mail, and that Mr. Oakes must bear the ultimate responsibility for this single isolated error or act of negligence. Under the foregoing law, we do not believe that Mr. Oakes is chargeable with or liable for this incident.

We conclude that as a matter of law, there was not sufficient evidence to establish good cause for the dismissal. The decision of the Civil Service Commission is therefore reversed.

*Reversed.*