HARRY MOZINGO, *Admr., etc.,*

*v.*

CLARENCE BARNHART, *et al., etc.*

(No. 14678)

Decided December 18, 1981.

*Donell, DeLaMater & Hagg and W. Dean DeLaMater,* for appellants.

*Pinsky, Barnes, Watson, Cuomo & Hinerman, Frank Cuomo, Jr. and Marc B. Chernenko,* for appellees.

MCGRAW, JUSTICE:

This action arises under the wrongful death statute, W.Va. Code § 55-7-5 (1981 Replacement Vol.), for damages arising out of the shooting death of Allen Ray Mozingo by

Clarence Barnhart, a deputy sheriff of Brooke County, West Virginia. The appellant, Russ Craft, was sheriff of Brooke County at the time of the death. The Circuit Court of Brooke County imposed vicarious liability for the negligent conduct of Clarence Barnhart thereby rendering the appellant finally responsible for the $10,587.50 verdict returned by the jury.

The events which formed the basis of this action occurred on May 6, 1972, when the defendant, Clarence Barnhart, pulled over the deceased because his name appeared in an 'A.W.O.L. flyer." After some conversation the deceased ran from his car, the deputy pulled his gun while giving chase, and the gun discharged killing the deceased.

In the early stages of this litigation the County Commission of Brooke County, plus the sheriff's bonding company, National Surety, were dismissed from this action. On December 11, 1978, the case proceeded to trial by jury against Clarence Barnhart and the appellant. The sole basis for liability against the appellant was vicarious responsibility for the conduct of Barnhart. The action went to the jury following instruction by the court that, as a matter of law, a sheriff was responsible for the acts of a deputy sheriff. The trial court also characterized Barnhart's actions as a "lawful arrest."

After deliberations of some duration, the jury returned a verdict in favor of the appellee and against both Barnhart and Craft in the sum of $10,587.50. Counsel for the appellant then moved for judgment notwithstanding the verdict pursuant to Rule 50(b), R.C.P., strictly on the issue of the sufficiency of the relationship between the appellant and Barnhart. The Circuit Court of Brooke County denied this motion.

The questions which the appellant brings forward for review can best be stated as a single issue: has the creation of a civil service system for deputy sheriffs ended or modified the sheriff's responsibility for those deputies' tortious actions which meet the pre-civil service require-

ments for liability? Unless the birth of a civil service system has ended the sheriff's responsibility this Court must also determine whether the deputy's action in the instant case established a sufficient basis upon which the jury could find the sheriff responsible. We have read *Oakes v. W.Va. Dept. of Finance and Admin.*, 164 W.Va. 384, 264 S.E.2d 151, 153 (1980) for general background in this area. Upon consideration of the matters submitted herewith, this Court believes that this appeal must be denied and the judgment of the Circuit Court of Brooke County ordered affirmed.

In order to answer the question presented here, this Court must first look briefly to sheriffs' and deputies' traditional responsibilities to the public, and the sheriffs' duties toward their deputies. The sheriff and his deputies are, first of all, charged with the enforcement of all criminal laws within their jurisdiction. 16 M.J. Sheriffs, § 2. In order to carry out this responsibility the Legislature has given them full power to arrest wrongdoers. *Code* 62-10-9 (1977 Replacement Vol.).

By statute in West Virginia the sheriff has been the traditional person who hires and fires deputies. *W. Va. Code* §§ 6-3-1, 6-3-2 (1979 Replacement Vol.); *State ex rel. Dingess v. Scaggs*, 156 W.Va. 588, 195 S.E.2d 724 (1974); *State ex rel. Christian v. St. Clair*, 153 W.Va. 1, 166 S.E.2d 785 (1969).[1] The county commission, however, can exercise veto power over a selected deputy. *Hockman v. Tucker County Court*, 138 W.Va. 132, 75 S.E.2d 82 (1953).

In addition to hiring his deputies, the sheriff is also responsible for their supervision. *Tanner v. McCall*, 625

---

[1] This section of the Code was altered by W. Va. Code § 7-14-1 *et seq.* (1976 Replacement Vol.), which establishes a civil service system for the deputy sheriffs, and W. Va. Code § 7-14A-1 *et seq.* (1981), which specifically limits the liability of sheriffs for any action taken by their deputies subsequent to January 1, 1978, if the county has opted to participate in the civil service program. The teaching of this action will remain viable for those counties which have not opted to establish a civil service system, and for any suits which may be pending from counties in which the tort proceeded the election to go under the civil service system.

F.2d 1183 (5th Cir. 1980). In part this is because when a deputy causes injury while acting in an official capacity, the sheriff is also liable. *See Coffelt v. Hartford, Accident Indemnity Co.*, 44 Tenn. App. 405, 314 S.W.2d 161 (1958). It has also been the case in West Virginia that when a deputy is acting in an official capacity, as it appears the deputy was here, then the sheriff is liable for the injury negligently caused by the deputy. *Lucas v. Locke*, 11 W.Va. 81 (1877).

The sheriff is also responsible for providing for training of the deputies. *Hall v. Protan*, 158 W.Va. 276, 210 S.E.2d 475 (1974). It may be argued that W.Va. Code § 7-14-16 (1976 Replacement Vol.), requires the county commission, as opposed to the sheriff, to provide training in the county, such as the one under consideration, that has adopted the deputy sheriffs' civil service system. It should be noted that W. Va. Code § 7-7-14 (1976 Replacement Vol.), which was passed by the Legislature the following year, authorizes the sheriff to request funds from the county commission to pay for training without having any dealing with the county civil service system. It would thus appear that the Legislature, while it may have desired to bring someone else into the training process, had no desire to exclude the sheriff therefrom.[2]

Nor can a lack of funds be raised as an excuse to the requirement that the deputies be trained to carry out their law enforcement functions. It is incumbent upon the sheriff and the local county commission to ensure that each deputy is adequately trained, and not to hire a number so large so as to prevent the training required. *In State ex rel. Cabell County Deputy Sheriffs' Association v. Dunfee*, 163 W.Va. 539, 258 S.E.2d 117 (1979), this Court upheld a lower court's denial of mandamus in an action where the sheriff terminated one deputy sheriff and

---

[2] This conclusion was born out by legislation effective July 9, 1981, which establishes an extensive training and certification program for all types of law enforcement officers in West Virginia including deputy sheriffs. W. Va. Code § 30-29-1 to -8 (1981).

decreased the salaries of the others when an anticipated pay raise did not come through.

The testimony in the instant action points out how serious this lack of training can be. All of the testimony taken indicates that the deputies were not given any instruction as to where or how their pistols were to be used, but were only advised to be careful with their weapons. As but one example of the need for weapons training Deputy Barnhart testified by deposition that at one point he had been cleaning his pistol when it went off and shot a bullet into the ceiling of the sheriff's office. This accident was not viewed by the sheriff as sufficient to initiate a training program dealing with the safety requirements of weapons.

Numerous actions have held that in the case of a municipal policeman the placing of them on the street armed and without adequate training in the use of these arms may render the municipality which does this liable for the injuries of bystanders, if the injury results from an unjustified or negligent shooting by that policeman in the course of performance of his duty, which is chargeable to the lack of training or experience. *E.g., McAndrew v. Mularchuk,* 33 N.J. 172, 162 A.2d 820 (1960); *Annot.* 88 A.L.R. 2d 1330 (1963). The liability of a sheriff in a similar situation would be similar to that of a municipality.

This Court does not hold that a sheriff in a county which provides for a civil service system involving deputy sheriffs is totally liable for the acts of those deputies as a result of a *res ipsa loquitur* or related theory of tort law. Rather, we hold that the sheriff does have a responsibility to provide for supervision and training of the deputies as outlined above and, failing in this, the sheriff may be liable for the injuries resulting from the tortious acts of his deputies which result from a lack of training or supervision.

Turning to the question of whether the evidence in the instant action provides a sufficient basis for this Court to affirm the decision of the jury below, this Court finds that

it does. The first portion of this opinion makes it clear that the trial court was not in error in giving its instructions regarding the relationship and responsibilities between the sheriff and the deputy sheriff. As set forth above, there are sufficient examples in this case where the sheriff's provision of training and supervision fell sufficiently short of a standard that would be required to exempt him from liability that the trial court's instruction was, as a matter of law, correct. The only remaining question is whether the jury based its findings on credible evidence, if it did so then the verdict will not be disturbed. *Bates v. Sirk*, 159 W.Va. 917, 230 S.E.2d 738 (1976); *Cook v. Harris*, 159 W.Va. 641, 225 S.E.2d 676 (1976); *Nesbitt v. Flaccus*, 149 W.Va. 65, 138 S.E.2d 859 (1964). In the instant case there was sufficient evidence for the jury to find Barnhart liable and therefore also sufficient for them to find the sheriff liable.

Turning to the question of whether the evidence in the instant action provides a sufficient basis for this Court to affirm the decision of the jury below, this Court finds that it does. *Lilly v. Taylor*, 151 W.Va. 730, 155 S.E.2d 579 (1967); *Muldoon v. Kepner*, 141 W.Va. 577, 91 S.E.2d 727 (1956).

For the reasons set forth above the judgment of the Circuit Court of Brooke County is ordered affirmed and this action is dismissed from the docket of this Court.

*Affirmed.*