298 S.E.2d 105

**Donna ADKINS**

v.

**CIVIL SERVICE COMMISSION and Department of Health.**

**No. 15524.**

Supreme Court of Appeals of West Virginia.

Nov. 18, 1982.

---

Philip Creel, Appalachian Research and Defense Fund, Inc., Welch, for appellant.

Curtis G. Power, II, Asst. Atty. Gen., Charleston, for appellees.

PER CURIAM:

Donna Adkins, appellant, appeals from a November 23, 1981 final order of the West Virginia Civil Service Commission which held that the commission was without jurisdiction over Adkins' appeal because she had voluntarily resigned her position with the West Virginia Department of Health. Adkins contends that because she did not manifest an unequivocal intention to give up her position, the commission erred in finding that she had resigned and consequently dismissing her appeal. We agree with Adkins and reverse and remand.

Adkins was an institutional aide at Pinecrest Hospital in Beckley, West Virginia. She had been so employed for approximately one and one-half years at the time the alleged resignation occurred. During Adkins' tenure as an institutional aide at Pinecrest, Elsie McCray, R.N., was Director of Nursing. McCray was one of Adkins' supervisors. The record indicates that there may have been ill will between these individuals as early as 1980, the first year of appellant's employment. In February of 1981, appellant had submitted her resignation, but had been persuaded to withdraw it and remain at Pinecrest.

On June 13, 1981, Adkins injured her back while working at Pinecrest. As a result of this injury, she received a medical excuse for absence from work on June 14, 15, and 16 due to back pain. Adkins claimed that June 17 and 18 were her scheduled days off, and therefore she did not report for work. McCray reported that these days were not Adkins' scheduled days off.

According to Adkins, McCray called her on June 17 and demanded that she report to work that day if she wished to keep her job. Adkins initially agreed and then found herself unable to come to work due to her back pain. She then telephoned the hospital to report that she would not be there that evening. Adkins spoke to Harriet McCaleb a hospital telephone operator, and close friend of Adkins. It was during the course of this conversation that Adkins uttered her alleged oral resignation. Variations on the exact wording occur in the testimony, but McCaleb and Adkins both relate that after some conversation about her back pain and her conflict with McCray, Adkins stated to McCaleb, "I'm going to have to quit."

While Adkins admitted that she knew McCaleb was to report the conversation to her superiors at the hospital,[1] she reported that the statement was made in the context of a long, open conversation with a friend. Adkins claims that she had no desire to resign when she made the statement, but felt she would be fired for not reporting to work.

It is not disputed that Jennifer Ann Meadows, McCray's secretary, called Adkins on June 18, 1981 to request a written resignation. At some time after that phone conversation, Adkins requested that she be permitted to meet with E.R. Eades, acting director of Pinecrest. This meeting was held on July 2, with Adkins, Eades and McCray. Accounts of what transpired at the meeting vary. McCray and Eades claim that they discussed the possibility of Adkins' return to work at Pinecrest. Adkins claims that the meeting consisted of attempts to procure her written resignation.

On July 6, McCray sent a letter to Adkins notifying her that the hospital had decided to accept her resignation of June 17.[2] Adkins appealed this action to the Civil Service Commission, which took testimony on the matter at a November 10, 1981 hearing. The commission ruled that Adkins had voluntarily resigned her position at Pinecrest and that, consequently, it had no authority to consider the matter.[3]

The issue in the case *sub judice* is whether the evidence supports the commission's finding that Adkins resigned her position. It is important to note Department of Health Regulation 3-2(c) (1980) governing oral resignations: "Oral Resignation: An

1. McCaleb completed a slip provided to report absences from work after her conversation with Adkins. The slip read as follows:

**ABSENTEE CALL-IN REPORT**

Employee's name: *Donna Adkins*

Supervisor's name: *Mrs. Shannon or Mrs McCray*

Date of call: *6/17/81*     Time of call: *4:58 P.M.*

Reason for absence: *She is quitting due to the fact that her*

Under care of Dr.: *Yes*     *Dr. says she is unable to*

Estimated length of absence: *work at this time*

Instructions given for further calls: *due to back problems*

*and other problems also.*

*Harriet McCaleb*

Name of person taking call

2. The letter read as follows:
"Dear Donna:
Mr. Eades and I have given much consideration and thought to our discussion with you on July 2, 1981. We have decided that it would serve your best interest to accept your verbal resignation that you related to Harriet McCaleb (telephone operator) on June 17, 1981.
I called you at home on the 18th of June to inquire of your unreported absence on June 15th and 16th. At that time, you informed me that you would have to terminate your employment immediately because of illness.
I sincerely hope your health will improve in the future.

Yours truly,
Elsie McCray, R.N. (s)
Elsie McCray, R.N.
Director of Nursing"

3. *West Virginia Code*, 29-6-15 (1977), *inter alia*, defines the appellate jurisdiction of the Commission as follows:

"Any employee in the classified service who is *dismissed* or *demoted* after completing his probationary period of service or who is suspended for more than thirty days in any one year, may, within thirty days after such *dismissal, demotion* or *suspension,* appeal to the

oral resignation may be accepted if the employee has *unequivocally* indicated an intention to give up a position. Final determination as to the acceptance of an oral resignation shall be made by the Director of Health or a designated representative of the Director." (emphasis added)  Certainly, the actions of the Department of Health must be in conformity with its own regulations. *See, State ex rel. Wilson v. Truby,* 167 W.Va. 179, 281 S.E.2d 231 (1981).

 Regulation 3–2(C) requires that Adkins must have unequivocally indicated her intention to resign in order for the Department of Health to accept her oral statement to McCaleb as a resignation.  The record reveals the alleged oral resignation to be an indefinite, casual remark, not initially regarded by the Pinecrest administration as a resignation.  Adkins could have easily expressed an unequivocal intention to quit her position with Pinecrest, but she did not.  Her indication that she might have to quit at some point in the future hardly amounted to an unequivocal expression of an intention to resign.  The facts of this case simply will not support a conclusion that Adkins indicated such an unequivocal intention.

The standard of review of findings by the Civil Service Commission is clearly established by this Court's decisions:

"A final order of the Civil Service Commission, based upon findings not supported by the evidence, upon findings contrary to the evidence, or upon a mistake of law, will be reversed and set aside by this Court upon review." Syllabus Point 2, *Drennen v. Department of Health,* 163 W.Va. 185, 255 S.E.2d 548 (1979); Syllabus, *Guine v. Civil Service Commission,* 149 W.Va. 461, 141 S.E.2d 364 (1965).

The record in the case *sub judice* does not support the commission's finding that Adkins unequivocally indicated her intention to resign.  Consequently, Pinecrest's termination of Adkins' employment was a dismissal over which the commission had jurisdiction, and we remand with directions

that the commission consider the merits of Adkins' appeal.

Reversed and Remanded.

NEELY and McHUGH, JJ., dissent and are of the opinion that the findings of the Civil Service Commission are not clearly wrong.

commission for review thereof." (emphasis added)