350 S.E.2d 17

**Raymond WAUGH**

v.

**The BOARD OF EDUCATION OF CABELL COUNTY, etc., et al.**

**No. 16802.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 10, 1986.

Decided Oct. 29, 1986.

William B. McGinley, W.V.E.A., Charleston, for appellants.

James Allan Colburn, Huntington, for appellee.

PER CURIAM:

This is an appeal by Raymond Waugh from a final order of the Circuit Court of Cabell County, entered on November 29, 1984, upholding his discharge from employment as a custodian with the Cabell County Board of Education. Mr. Waugh asserts that his actions did not warrant a total discharge and that some lesser punishment was appropriate. We agree and we reverse the order of discharge.

Prior to his disciplinary termination, Mr. Waugh was employed as a custodian at Highlawn Elementary School in Huntington for about seven years. His supervisor was David Webb with whom he worked the evening shift. Located on the school grounds and in a building owned by the Board of Education of Cabell County is the Cerebral Palsy Clinic, an independent con-

tractor of the Cabell County Board of Education. The clinic is responsible for providing educational opportunities in conjunction with Highlawn Elementary for those children who have cerebral palsy or other associated mental or physical conditions. Mr. Waugh's supervisor worked as a custodian for the clinic when he was not working for the Board of Education and earned extra income for this work from the clinic. On occasion, Mr. Waugh would assist his supervisor with custodial duties at the clinic.

Shortly prior to Christmas of 1983, Mr. Waugh became intoxicated and went to the Cerebral Palsy Clinic, which he had previously found unlocked, and took a radio, a tool box, and a cash box containing $25.00. This property was taken from the clinic after his normal working hours for the Board of Education. In February of 1984, Mr. Waugh was questioned by the police concerning the theft of the items from the clinic and admitted stealing the items. During this questioning, the appellant admitted that he had taken certain perishable food items and a used broom or rake from the school. Two days after this questioning, he returned the items taken from the clinic to the police who returned them to the clinic. At the time of his disciplinary termination, no criminal charges had been filed against the appellant by anyone from the clinic.

On May 22, 1984, the Superintendent of the Cabell County Board of Education presented charges of "immorality" against the appellant to the Cabell County Board of Education under W.Va.Code, 18A-2-8, charging him with theft of the items taken from the clinic and Highlawn Elementary. The Superintendent informed the appellant of these charges by letter of May 25, 1984.

During an evidentiary hearing on these charges before the Cabell County Board of Education held on July 9, 1984, Mr. Waugh admitted to taking the items from the Cerebral Palsy Clinic. He stated that also he had taken some cheese, butter, and a broom or rake from Highlawn Elementary School. However, he testified that the items taken from Highlawn had been given to him by school employees, and he expressly denied ever stealing anything from Highlawn Elementary. During this hearing, he expressed regret for having taken the items and stated he had returned all the items to the clinic.

Mr. Waugh's supervisor, David Webb, testified that he had obtained leftover food from a cook at Highlawn Elementary after the school year and that he had shared the food with Mr. Waugh. Furthermore, Mr. Webb testified that he had, on occasion, given an old rake or broom from the school's supply to Mr. Waugh. He also stated to his knowledge that Mr. Waugh had not stolen such items from the school and that he believed Mr. Waugh to be a competent, reliable, and faithful employee of average or above-average ability.

■ The Board of Education relied on the admitted theft and W.Va.Code, 18A-2-8, which provides that a board of education may suspend or dismiss any employee at any time for "[i]mmorality, incompetency, cruelty, insubordination, intemperance, or willful neglect of duty." We discussed this issue in *Golden v. Board of Education,* 169 W.Va. 63, 285 S.E.2d 665 (1981), which involved a teacher who had pled nolo contendere in a magistrate court to a shoplifting charge. She was discharged by the board of education. In deeming this punishment too severe, we stated in Syllabus Point 2 of *Golden:*

> "In order to dismiss a school board employee for acts performed at a time and place separate from employment, the Board must show a 'rational nexus' between the conduct performed outside of the job and the duties the employee is to perform."

The result in *Golden* was premised on our earlier case of *Thurmond v. Steele,* 159 W.Va. 630, 225 S.E.2d 210 (1976), where we refused to uphold a civil service employee's discharge based on a conviction for reckless driving and driving while intoxicated which had occurred when he was not at work.

Our opinions have been patterned after other courts which look first to the conduct involved and then ascertain if that conduct

has in some way made the employee unfit to carry out his or her responsibilities. *Morrison v. State Board of Education*, 1 Cal.3d 214, 235, 461 P.2d 375, 391, 82 Cal. Rptr. 175, 191 (1969); *Erb v. Iowa State Board of Public Instruction*, 216 N.W.2d 339 (Iowa 1974); *Lindgren v. Board of Trustees, High School District No. 1*, 171 Mont. 360, 558 P.2d 468 (1976).

In *Golden,* we also recognized that in a teaching position the questioned conduct may because of its "notoriety ... significantly and reasonably impair the capability of the particular teacher to discharge the responsibilities of the teaching position." 169 W.Va. at 69, 285 S.E.2d at 669. The Board introduced no evidence at the hearing which would show that Mr. Waugh's theft was a subject of any notoriety at the school or in the community in general.

There are several factors mitigating in Mr. Waugh's favor. His past job performance over the years was good. The material that he removed from the school appeared from the evidence to have been taken with his supervisor's authorization. The Board made no finding that this conduct was improper. We are left with the charge that he admitted, i.e., taking the property from the clinic. While this conduct cannot be condoned, it was moderated by his voluntary admission of the act followed by the return of the property.

It appears the act was done when he was intoxicated and he expressed deep remorse for his actions. Under these circumstances, we do not find that the *Golden* rule has been met such that a discharge is warranted. As we noted in the single Syllabus of *Blake v. Civil Service Comm'n,* 172 W.Va. 711, 310 S.E.2d 472 (1983): "The petty theft by state hospital employees of clothing donated for patients is worthy of discipline, but does not constitute good cause for dismissal of long-term civil service tenured employees with unblemished work records." *See also Serreno v. West Virginia Civil Service Comm'n,* 169 W.Va. 111, 285 S.E.2d 899 (1982); *Oakes v. West Virginia Department of Finance and Administration,* 164 W.Va. 384, 264 S.E.2d 151 (1980).

We note that Mr. Waugh has been discharged since July of 1984 and we consider that this two-year period without pay is sufficient punishment for his transgression. For the foregoing reasons, the final order of the Circuit Court of Cabell County affirming the decision of the Board of Education of that county is hereby reversed and this action is remanded to that court with instructions to direct the Board of Education to reinstate Mr. Waugh.

Reversed and Remanded.