354 S.E.2d 111

**Paul B. FUTEY**

v.

**The CITY OF WHEELING, etc.**

No. 16912.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 1986.

Decided Nov. 14, 1986.

Suzanne Belot, City Atty., Wheeling, for appellant.

Arch W. Riley, Sr., Wheeling, for appellee.

PER CURIAM:

This is an appeal by the City of Wheeling from the final order of the Circuit Court of Ohio County entered on July 19, 1985, which set aside the order of the Wheeling Police Civil Service Commission and reinstated Officer Paul Futey. The City of Wheeling asserts that the circuit court erred in concluding that the findings of the Police Civil Service Commission were clearly wrong.

The incident in question which led to the initial discharge took place on February 11, 1984. On that date and while on duty, Officer Futey, a twenty-seven-year veteran of the Wheeling police force, received a call about a person who had been drinking at the McLure Hotel bar. Apparently, at or about the same time, Officer Robert Heldreth of the Wheeling police force was responding to the same call. Officer Futey drove to the Market Street entrance of the McLure Hotel and there he located one Charles VanSickle lying on the floor inside the first set of two sets of doors leading to the lobby of the McLure Hotel. Before he entered the hotel, Officer Futey saw Officer Heldreth proceeding toward the hotel.

From this point forward, there are disputes in the testimony as to the facts. Officer Futey testified that he looked at the person on the floor and then immediately went to the hotel desk. The person at the desk testified that Officer Futey did not come to the desk, but stooped over and

then stood up, looking at something in his hand.

Officer Futey testified that when he tried to arouse the intoxicated person, his glass case fell to the floor and he bent over to pick up the case and put it in his coat. When he leaned over to pick up his glass case, he saw Officer Heldreth coming around a metal drum in a construction area near the McLure Hotel. Another witness, Mr. Benjamin Senkbeil, testified that there was a construction site located near the entrance of the McLure Hotel with barrels on the sidewalk. Officer Heldreth testified there were no barrels at the construction site and that he was only six to eight feet away when he first saw Officer Futey.

Officer Heldreth further testified that he saw Officer Futey take Mr. VanSickle's wallet from his trousers and that he asked Officer Futey on three different occasions to look for the man's wallet. This was done according to Officer Heldreth to provide Officer Futey with an excuse to search and return the wallet. Officer Heldreth testified that he was informed by Mr. VanSickle that his wallet was missing.

On the following day, Officer Heldreth made a written statement to the police chief that he saw Officer Futey take Mr. VanSickle's wallet from his trousers on the previous night. Mrs. Lillian Chenoweth, the attendant at the night desk at the McLure Hotel, gave a statement that she saw Officer Futey with Mr. VanSickle's wallet in his hand. During hearings before the Police Civil Service Commission, Mrs. Chenoweth testified she had never told Officer Heldreth that she had seen Officer Futey with Mr. VanSickle's wallet.

The city manager of the City of Wheeling notified Officer Futey on March 2, 1984, that he was dismissed from the police department subject to review by the police hearing board. The board held a hearing on March 14, and on March 16 upheld the dismissal in a unanimous decision. Officer Futey appealed to the Police Civil Service Commission of the City of Wheeling. After a de novo hearing, the Commission held that the City of Wheeling had met its burden of proof for discharging Officer Futey and affirmed the board's decision.

In its opinion, the Police Civil Service Commission found that the evidence favored Officer Heldreth's version of the facts more than that of Officer Futey, and concluded that Officer Futey improperly took a wallet containing about $100 at a time when the owner was intoxicated and unconscious.

The Commission rendered a ten-page, well reasoned opinion setting out the testimony of the witnesses and, while acknowledging the presence of conflicts, resolved them in favor of the City by pointing to specific areas of testimony that buttressed the City's case.[1] It must be remembered

---

1. The Commission's opinion states:

"This finding is based principally upon four areas of testimony that point directly to what occurred during those early morning hours, and cannot be seriously disputed.

"The first involve the sequence of events as testified to by Officer Futey and Ms. Chenoweth.

"Ms. Chenoweth is a totally disinterested witness in this case whose testimony therefore must be accorded more weight than a witness who has an interest in the outcome.

"Ms. Chenoweth testified that Officer Futey, immediately upon his arrival 'stooped over and came up and looked at something in his hand' [Tr. 39], and does not recall any conversation with Officer Futey [Tr. 38, 47]. Within an instant of seeing Officer Futey 'stoop down and come up looking at something', Ms. Chenoweth observed that Officer Heldreth had arrived in the area of the foyer near the person who was under investigation [Tr. 46].

"The significance of Ms. Chenoweth's version is that it corroborates Officer Heldreth's testimony that he saw Officer Futey stoop down and examine some object, which is the first piece in this puzzle.

"Next, there is no serious dispute as to the accuracy of the description of the wallet given by Officer Heldreth, as being brown in color with a single fold. Augmenting this fact is the undisputed testimony that Mr. VanSickle actually lost possession of his wallet on this particular morning. It simply would have been impossible for Officer Heldreth to give such a description of Mr. VanSickle's wallet if in fact he did not observe Officer Futey taking it from Mr. VanSickle and placing it in his own pocket. Further, it is more than mere coincidence that Mr. VanSickle's wallet actually did disappear.

"Finally, and what is possibly the most convincing item of evidence to this Commission, is the fact that Officer Heldreth immediately

that the Commission heard the witnesses and had the benefit of observing their demeanor.

In contrast to the rather elaborate analysis made by the Commission, the circuit court issued a letter opinion which essentially consisted of a one-page statement of a rather conclusory nature.[2]

■ The City of Wheeling contends that based upon the conflicts in the evidence, the findings of fact and conclusions of law of the Police Civil Service Commission were not clearly erroneous and the circuit court erred in substituting its judgment of the facts. The basic standard for judicial review is contained in the single Syllabus of *Pryor v. Hutchinson*, 167 W.Va. 679, 280 S.E.2d 325 (1981):

> " 'A final order of a police civil service commission based upon a finding of fact [should] not be reversed by a circuit court unless it is clearly wrong or is based upon a mistake of law.' Syllabus Point 1, *City of Logan v. Dingess*, W.Va. [161 W.Va. 377], 242 S.E.2d 473 (1978), quoting, Syl. pt. 1, *Appeal of Prezkop*, 154 W.Va. 759, 179 S.E.2d 331 (1971)."

We have stated on a number of occasions that "the finding must be clearly wrong to warrant our 'judicial interference.' " *Billings v. Civil Service Commission*, 154 W.Va. 688, 692, 178 S.E.2d 801, 804 (1971). *See Caldwell v. Civil Service Commission*, 155 W.Va. 416, 184 S.E.2d 625 (1971); *Childers v. Civil Service Commission*, 155 W.Va. 69, 181 S.E.2d 22 (1971); *Guine v. Civil Service Commission*, 149 W.Va. 461, 141 S.E.2d 364 (1965).

■ We have examined the evidence presented to the Police Civil Service Commission and although there were conflicts in the evidence, we cannot say that its findings were clearly wrong. The circuit court, therefore, should not have reversed the Commission on the basis of the evidence.

Accordingly, the final order of the Circuit Court of Ohio County is hereby reversed, and this case is remanded with directions that the order of the Police Civil Service Commission be reinstated.

Reversed and Remanded.

Miller, Chief Justice, dissenting:

Although this case is close on the facts, I must respectfully dissent from the majority's conclusion that a complete discharge of Officer Futey was warranted. I consider the punishment too harsh and even though this point was not directly addressed in the underlying proceedings, this would not foreclose our consideration of the matter. We have in the past held that the outright "dismissal of long-term civil service employees with unblemished work records" is too harsh where the infraction is not sub-

---

after the event, and without having time to fabricate such a devastating description of an event against a fellow officer, did advise Officer Ellison that Officer Futey had taken the wallet [Tr. 71].

"It would certainly stretch the limits of credulity to think that Officer Heldreth would, within such a short period of time, plan to destroy the career of a veteran police officer, and so immediately advise a fellow officer of the larceny, if in fact it actually did not occur exactly as Officer Heldreth initially described and as he testified during the course of the hearing.

"Further, the immediacy of relating this same episode to another superior officer is further evidence that Officer Heldreth had accurately described what occurred. After informing Officer Ellison of what he had observed, Officer Heldreth then contacted Lieutenant Melvin Brandt by telephone, informing him that Officer Futey had taken the wallet from Mr. VanSickle's pocket. This was done at a time when both Officer Heldreth and Officer Futey had arrived at a 7–11 Store on the corner of 14th and Market Streets, [Tr. 72]." (Footnote omitted).

2. This letter opinion stated:

"It is inconceivable that an officer of some twenty-five or more years of experience would jeopardize his retirement and his reputation in the community in which he resides by taking the property of another. To justify Officer Futey's dismissal the evidence offered must clearly preponderate against him. This burden cannot be reached by uncorroborated testimony that is filled with contradiction.

"Please prepare an Order reversing the findings of the Police Civil Service Commission of the City of Wheeling dated June 15, 1984. The Order should further reflect that Officer Futey be reinstated with pay from the date of his suspension and finally that his attorney be paid his attorney fees as prescribed by law."

stantial. Syllabus, in part, *Blake v. Civil Service Comm'n,* 172 W.Va. 711, 310 S.E.2d 472 (1983). *See also Waugh v. Board of Education,* 177 W.Va. 16, 350 S.E.2d 17 (1986); *Serreno v. West Virginia Civil Service Comm'n,* 169 W.Va. 111, 285 S.E.2d 899 (1982); *Oakes v. West Virginia Department of Finance & Administration,* 164 W.Va. 384, 264 S.E.2d 151 (1980). Both *Blake* and *Waugh* involved petty thefts by State employees who otherwise had good work records which is very similar to the facts in Officer Futey's case.