380 S.E.2d 216

**Frank R. HOUSE**

v.

**CIVIL SERVICE COMMISSION OF the STATE OF WEST VIRGINIA, and the West Virginia Alcohol Beverage Control Commission.**

No. 18481.

Supreme Court of Appeals of West Virginia.

April 21, 1989.

William R. Wooten, Wooton, Wooton, & Fragile, Beckley, for Frank R. House.

Jan J. Fox, Sp. Asst. Atty. Gen., Charleston, for ABCC.

PER CURIAM:

Frank R. House appeals from a final order of the West Virginia Civil Service Commission (CSC) upholding the appellant's dismissal from employment with the West Virginia Alcohol Beverage Control Commission (ABCC). We granted this appeal to determine whether the record supported the CSC's finding that the appellant had been guilty of misconduct justifying dismissal. After examining the record, we conclude that the evidence does not support a dismissal and we reverse the decision of the CSC.

Mr. House, a cashier in a Beckley ABCC store, was employed by that agency for approximately ten and one-half years. He was also a lieutenant in the West Virginia Army National Guard. By letter dated February 23, 1987, the ABCC Commissioner dismissed Mr. House, primarily for his "attempt to receive payment of State funds for military services not rendered nor entitled to receive, resulting in gross misconduct."

Two specific instances of misconduct are alleged. The first centered on December 5 and 6, 1986, when Mr. House went to the National Guard Armory to prepare for an inspection. Because the CSC made no finding of misconduct as to this incident, we decline to discuss it. The second charge, and the only one considered by the CSC in its decision,[1] related to a December 12, 1986 request for duty leave made to the ABCC.

The record shows that Mr. House had a duty day on December 13, 1986, at the National Guard Armory. He requested a training certificate for December 12 and 13, 1986, from Specialist Varney, who was the unit administrator. The order was signed by Specialist Varney rather than Lieutenant Chambers. It is clear, however,

1. The decision of the CSC is as follows:
"From the testimony presented at the hearing, this Commission concludes that good cause existed for the dismissal of appellant. Commander Chambers testified that the signature appearing on the letter of certification dated December 5, 1986, was not his handwritten signature; he testified he did not authorize Specialist Varney to sign his name to that document; and testified that both Specialist Varney and appellant were orally counseled for their actions. Appellant acknowledged that he was not required and did not report to the unit for training on December 12 even though that date was indicated as a training day in the letter of certification. Appellant acknowledged that he had exhausted all his military leave credits for the calendar year 1986 and was also aware of the agency's policy whereby requests for military leave were always granted, but that requests for annual leave were sometimes denied. Appellant acknowledged that he did not review the letter of certification signed by Specialist Varney to make sure the dates were correct. This appellant should have done. Not only were the dates inaccurate but the document bore an unauthorized signature of the commanding officer who testified to that effect. We credit that testimony. For these reasons, this Commission finds that good cause existed for the dismissal of appellant. This case is dismissed from the docket of this Commission."

that this was common practice, as the CSC acknowledged in its statement of facts: "Lt. Chambers testified that it was common practice, however, that Specialist Varney would sign his name to official documents."

The crux of the complaint is that there was no scheduled training session on December 12, 1986. Mr. House admits this fact, but states that he had anticipated leaving work early on December 12 so he could attend his grandfather's birthday party in Beckley. Because Mr. House had used up his thirty days military leave, this extra day was charged against his annual leave with the ABCC.

We set forth the dismissal standard for a State civil service employee in Syllabus Point 1 of *Oakes v. West Virginia Dep't of Fin. & Admin.*, 164 W.Va. 384, 264 S.E.2d 151 (1980):

"W.Va.Code, 29-6-15, requires that the dismissal of a civil service employee be for good cause, which means misconduct of a substantial nature directly affecting the rights and interest of the public, rather than upon trivial or inconsequential matters, or mere technical violations of statute or official duty without wrongful intention."

While a final order of the CSC based upon a finding of fact will not be reversed by this Court upon appeal unless it is clearly wrong, *Vosberg v. Civil Serv. Comm'n*, 166 W.Va. 488, 494, 275 S.E.2d 640, 643 (1981), this case is controlled by our traditional rule of law first stated in *Guine v. Civil Serv. Comm'n*, 149 W.Va. 461, 141 S.E.2d 364 (1965), in its single Syllabus:

"A final order of the Civil Service Commission, based upon findings not supported by the evidence, upon findings contrary to the evidence, or upon a mistake of law, will be reversed and set aside by this Court upon review."

*See also American Fed. of State, County & Municipal Employees v. Civil Serv. Comm'n*, 174 W.Va. 221, 324 S.E.2d 363 (1984); *Adkins v. Civil Serv. Comm'n*, 171 W.Va. 132, 298 S.E.2d 105 (1982); *Crawford v. Erwin*, 171 W.Va. 7, 297 S.E.2d 206 (1982); *Drennen v. Department of Health*, 163 W.Va. 185, 255 S.E.2d 548 (1979); *Yates v. Civil Serv. Comm'n*, 154 W.Va. 696, 178 S.E.2d 798 (1971).

■ The CSC decision based its good cause finding for Mr. House's dismissal on two acts. First, Mr. House presented military orders with a falsified signature. This finding was based upon Lieutenant Chambers' testimony. However, the CSC's fact conclusion is incomplete. While Lieutenant Chambers did testify that the signature on the orders was Specialist Varney's, he also admitted that Varney was authorized and did routinely sign his name to military documents. The CSC's characterization of Lieutenant Chambers' testimony is contrary to the evidence and does not support a finding that falsified military orders were submitted.

■ The second act was the inclusion of December 12, 1986, as a training day on Mr. House's letter of certification. The CSC found that December 12 was not a training date and that Mr. House should have reviewed the certification letter for inaccuracies. He was aware of the ABCC's policy that a request for military leave was always granted, but that requests for annual leave were sometimes denied. The record does contain conflicting evidence about December 12. However, the CSC acknowledged that the date was an annual leave day for Mr. House and not a paid military leave day. Mr. House's testimony was that he used part of that leave to attend his grandfather's birthday party and the rest to travel to his military drill site.

It may well be that including the December 12 date as a military duty date was improper. The proper course of conduct would have been to request one day's annual leave from the ABCC. As it turned out, he was charged with one day's annual leave for December 12, 1986. In any event, we do not believe, in the words of *Oakes*, that this was "misconduct of a substantial nature directly affecting the rights and interest of the public[.]" Syllabus Point 1, in part. Consequently, we find that the discharge was too severe a punishment.

In view of the fact that Mr. House has been terminated for more than two years, we deem this to be sufficient punishment and order his reinstatement with one year's back pay. In view of the fact that he has substantially prevailed on this appeal, his attorney is entitled to reasonable fees pursuant to W.Va.Code, 29–6–15. *Barnes v. Public Serv. Comm'n,* 172 W.Va. 232, 304 S.E.2d 685 (1983).

Accordingly, the order of the Civil Service Commission is reversed with directions that Mr. House be reinstated to his former position.

Reversed with directions.