# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Simona Southall,**
**Petitioner**

**vs)  No. 18-0931** (Kanawha County 18-AA-220)

**West Virginia Division of Corrections,**
**Respondent**

**FILED**

**October 11, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Simona Southall, by counsel Alan L. Pritt, appeals the order of the Circuit Court of Kanawha County, entered on September 20, 2018, that reversed the May 30, 2018, decision of the West Virginia Public Employees Grievance Board, favorable to Ms. Southall, after Ms. Southall was terminated from her position as a parole officer. Respondent West Virginia Division of Corrections appears by counsel Patrick Morrisey and Briana J. Marino.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Southall was a highly-regarded parole officer with the West Virginia Division of Corrections ("the division"), with the distinction of having been nominated regionally by her supervisor for the "employee of the year" award. In June of 2017, federal agents executed a search warrant on the home she had long shared with her boyfriend, Jonathan Brockman, and where the pair was raising a child. Agents seized a shocking amount of suspect material from the home, including nearly forty pounds of marijuana, more than 130 grams of oxycodone, a money-counting machine, eleven firearms, and more than $182,000. Mr. Brockman ultimately was indicted, along with twenty-two other individuals, on federal drug charges. To date, it appears that Ms. Southall is unindicted.

Immediately after the raid on the shared home, Ms. Southall reported the search to her supervisor, and he, in turn, filed his own report. The division placed Ms. Southall on a non-disciplinary, unpaid, ninety-day suspension, pending further inquiry. Prior to the expiration of the suspension, the division terminated Ms. Southall's employment. Before the termination, Ms. Southall filed a grievance with the West Virginia Public Employees Grievance Board ("the grievance board") challenging the suspension and seeking back pay, and upon termination she

1

filed a second grievance challenging that decision. The grievances were consolidated and, after referring the matters to an administrative law judge for hearings and a recommended decision, the grievance board ordered Ms. Southall reinstated with an award of back pay. The division appealed the grievance board's final order to the Circuit Court of Kanawha County, which reversed the grievance board decision by order entered on September 20, 2018.

The circuit court explained that the findings and conclusions adopted by the grievance board were unworthy of deference because "reasonable minds cannot differ on the issue of whether [Ms.] Southall's actions, or inactions, created an appearance of impropriety that adversely reflected on the integrity of [Ms. Southall], her position, and the Division of Corrections." Ms. Southall does not assign particular error to the circuit court's order, but generally presents the question of whether the circuit court erred in its reversal. Employing the same standard as that by which the circuit court reviewed the grievance board decision[1] (*see* syllabus point 1, *Martin v. Barbour Cty. Bd. of Educ.*, 228 W. Va. 238, 719 S.E.2d 406 (2011)), we find that the circuit court correctly found that the grievance board decision is contrary to law and Ms. Southall was discharged for good cause.

A termination is effected for good cause when occasioned upon "misconduct of a substantial nature directly affecting the rights and interest of the public, rather than upon trivial or inconsequential matters, or mere technical violations of statute or official duty without wrongful intention." Syl. Pt. 1, in part, *Oakes v. W. Va. Dep't of Fin. & Admin.*, 164 W. Va. 384, 264 S.E.2d 151 (1980). In the context of public safety, "circumstances which have been considered just cause [for dismissal] are involvement in activity which casts aspersions or doubt on a law enforcement officer's honesty and integrity and which directly affects the public's rights and interests." *State ex rel. Ashley v. Civil Svc. Comm'n*, 183 W. Va. 364, 368, 395 S.E.2d 787, 791 (1990). Consistent with this expectation of integrity in protective services, the division, in its policy directives manual, describes conduct required of its officers as that, "both on and off duty[, which] will not discredit either themselves, other employees, or the [d]ivision" and further "creates and maintains respect" for the division. Employees are pointedly directed to avoid any action which might "affect[] adversely the confidence in the public integrity" of the division.

Ms. Southall's involvement with the activity in her home, while not fully known, is unacceptable under the standards described above. Special Agent Jennifer Wilson, a Federal Bureau of Investigations drug task force coordinator, testified at Ms. Southall's grievance hearing and described the search of the home and the seized contraband. Through Agent Wilson's

---

[1] Circuit courts are instructed:

> Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syl. Pt. 1, *Cahill v. Mercer Cty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000).

testimony, the division submitted numerous photographs taken during the raid showing the placement of seized items in the home. Notably, a pungent bag of marijuana was found in a shed behind the home, a "bale" of marijuana was found under a deck on the back of the home, and pills were found in a bathrobe in the master bath and in tins and bags in the kitchen. Agents found "bundles of money, multiple places in the bedroom," primarily in ten-dollar and twenty-dollar denominations. A utility room housed a money-counting machine and a weapon on a tripod that possibly pointed out a window. Searchers collected additional firearms throughout the home, from spots that included the top of the microwave oven and the refrigerator. A substance used for "cutting" heroin was found in a child's play area, and the search of that area also bore a half-gallon bag of marijuana and scale. Agent Wilson described the home as "a textbook location of a drug dealer" and concluded that no one—particularly someone with law enforcement training—could live in the home unaware of the illegal drug trafficking conducted there. Moreover, Agent Wilson testified that the raid on the shared home was conducted in the investigation of a long-term and substantial criminal enterprise, and that Mr. Brockman was well-known in the community for illegal drug activity.

Subsequent to Agent Wilson's testimony, Ms. Southall's supervisors testified that the seizure undermined Ms. Southall's credibility, judgment, and ability to perform the essential functions of her job. We believe that the supervisors' statements espouse the practical considerations here, and we thus find that the application of the law leads only to the conclusion that Ms. Southall, at a minimum, either willfully or incompetently ignored substantial evidence of drug trafficking occurring under her nose, in the home in which she and Mr. Brockman raised a child. Ms. Southall's "involvement . . . casts aspersions or doubt on [her] honesty and integrity and . . . directly affects the public's rights and interests." *Ashley*, 183 W. Va. at 368, 395 S.E.2d at 791. The circuit court skillfully undertook this analysis, found that the grievance board decision was contrary to law, and concluded that Ms. Southall was terminated for good cause. We find no error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 11, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins

**DISSENTING:**

Justice John A. Hutchison