Dannie Certain, a former City of Huntsville police officer, filed this action against the City and Chief of Police Sal Vizzini. He sought damages from Chief Vizzini for allegedly defamatory statements Vizzini had made about Certain. Against the City, Certain asserted a contract claim for wages due and unpaid and a civil rights claim under 42 U.S.C. § 1983 for damages for alleged violations of his rights under the United States Constitution and federal laws. All other claims were dismissed prior to or during the trial. These counts were submitted to the jury. Verdicts were returned in favor of Chief Vizzini and against Certain on the defamation counts. These are not at issue on this appeal. The jury returned verdicts in favor of Certain and against the City on the contract count and the § 1983 claim. The City appealed from the judgment entered on these verdicts.
Following the entry of the judgment on the merits, Certain filed a motion for attorney's fees pursuant to 42 U.S.C. § 1988, which allows the prevailing plaintiff in a § 1983 action to recover his "attorney's fees as part of the costs." This motion was outstanding at the time the City filed its notice of appeal, and the award was not made until six days after the appeal was taken.
Certain has moved to dismiss this appeal on the grounds that it is not from a final judgment. He argues that a final judgment is one which is the complete adjudication of all
matters in dispute and, in the case of a judgment for damages, is a sum certain, determinable without looking at extraneous facts. Moody v. State ex rel. Payne, 351 So.2d 547 (Ala. 1977);Newpark Shipbuilding Repair, Inc. v. Roundtree, 698 F.2d 743
(5th Cir. 1983); Gurule v. Wilson, 635 F.2d 782 (10th Cir. 1980). He contends that the final adjudication of all matters in controversy did not occur until attorney's fees were awarded, which was after the City filed its notice of appeal; he argues that the City, therefore, appealed from a nonappealable interlocutory judgment on the merits, and that the final judgment has never been appealed.
This is contrary to a recent statement by the United States Supreme Court on this point. In White v. New Hampshire Dept. ofEmployment Security, 455 U.S. 445, 102 S.Ct. 1162,71 L.Ed.2d 325 (1982), the Supreme Court was asked to determine whether a post-judgment motion for attorney's fees under § 1988 was a "motion to alter or amend the judgment," under Federal Rule of Civil Procedure 59 (e). The Court answered this question in the negative, and in a footnote added:
 "There is implicit support for this view in decisions of the Courts of Appeals holding that decisions on the merits may be `final' and `appealable' prior to the entry of a fee award. See, e.g., Memphis Sheraton Corp. v. Kirkley, 614 F.2d 131, 133 (CA6 1980); Hidell v. International Diversified Investments, 520 F.2d 529, 532, n. 4 (CA7 1975); see also Obin v. District 9, Int'l Assn. of Machinists and Aerospace Workers, 651 F.2d, [574] at 583-584 [CA8 1981]. If a merits judgment is final and appealable prior to the entry of a fee award, then the remaining fee issue must be `collateral' to the decision on the merits. Conversely, the collateral character of the fee issue establishes that an outstanding fee question does not bar recognition of a merits judgment as `final' and `appealable.' Obin v. *Page 717 District No. 9, Int'l Assn. of Machinists and Aerospace Workers, supra, at 584. Although `piecemeal' appeals of merits and fee questions generally are undesirable, district courts have ample authority to deal with this problem."
455 U.S. at 452, n. 14, 102 S.Ct. at 1167, n. 14.
Similarly, the Eleventh Circuit Court of Appeals inRothenberg v. Security Management Co., 677 F.2d 64, 65 (11th Cir. 1982), held that a request for attorney's fees is a motion for costs, and noted that "[i]t is well settled in this circuit that costs may be taxed after a notice of appeal [from a judgment on the merits] has been filed."
The final judgment in this case was entered on January 22, based on the jury verdicts. The City filed a motion for judgment notwithstanding the verdict, and then filed a timely notice of appeal within forty-two days after this motion was denied. The outstanding motion for fees did not destroy the finality of the judgment on the merits. Certain's motion to dismiss this appeal is, therefore, denied.
In the complaint, Certain made numerous allegations in support of his § 1983 claim. Generally, they can be divided into two groups. First, he alleged that the City wrongfully took action against him in retaliation for his exercise of his First Amendment rights. Second, he asserts that the City directly infringed upon rights protected by the Constitution, laws of the United States, and state statutes. However, we need not consider any contention, made in support of the § 1983 claim, that Certain's rights secured by state law were infringed upon, because § 1983 provides a remedy for infringement of rights guaranteed by the Constitution and laws of the United States only. Baker v. McCollan, 443 U.S. 137,99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); Croy v. Skinner, 410 F. Supp. 117
(N.D.Ga. 1976). The only state law claims, which included Certain's allegations that his rights under state law were violated, were dismissed and are not subjects of this appeal.
We begin by examining Certain's contention that the rules and regulations of the Huntsville Police Department are invalid under the United States Constitution and federal laws. The regulations to be considered state:
 "1.3.4.24 [Employees of the department may be subject to dismissal, demotion, or suspension for] engaging in partisan politics.
". . .
 "1.3.9.18 POLITICAL SOLICITATIONS — Members or civilian employees of the department shall not solicit contributions in money or any other manner, directly or indirectly on any pretext, to any person, committees or associations for partisan political reasons, nor shall they interfere or use the influence of their office for partisan political reasons."
Certain argues that these regulations are vague and overbroad, infringe upon his First Amendment rights, and violate the Equal Protection Clause of the United States Constitution because they deprive him of a "substantive right to participate in the electoral process equally with other voters."
This type of regulation of public employees has been challenged numerous times in the federal courts. Probably the best known case is United Public Workers of America v.Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), in which the United States Supreme Court upheld § 9 (a) of the Hatch Act (5 U.S.C. § 7324), which made it "unlawful for any person employed in the executive branch of the Federal Government . . . to use his official authority or influence for the purpose of interfering with an election or affecting the result thereof." The Supreme Court recognized that this section interfered with a citizen's rights under the First, Ninth, and Tenth Amendments "to act as a party official or worker to further his own political views." United Public Workers ofAmerica v. Mitchell, 330 U.S. at 94, 67 S.Ct. at 566. Nevertheless, it upheld the statute because the legislation "leaves untouched full participation *Page 718 
by employees in political decisions at the ballot box and forbids only the partisan activity of federal personnel deemed offensive to efficiency." 330 U.S. at 99, 67 S.Ct. at 569.
 "[Furthermore,] [i]t is only partisan political activity that is interdicted. It is active participation in political management and political campaigns. Expressions, public or private, on public affairs, personalities and matters of public interest, not an objective of party action, are unrestricted by law so long as the government employee does not direct his activities toward party success."
330 U.S. at 100, 67 S.Ct. at 569. Not only was the act not overly broad, but it was found to be a reasonable and necessary limitation to protect the integrity and competency of the government services.
The concerns of the Supreme Court have been reiterated in detail by the Fifth Circuit in Wachsman v. City of Dallas,704 F.2d 160 (5th Cir. 1983); reh. denied, 710 F.2d 837 (1983), appeal pending in U.S. Supreme Court. Dallas city firemen and a police and fire action committee challenged a Dallas ordinance which prohibited city employees from circulating petitions and giving, soliciting, or receiving contributions in connection with non-partisan city council elections. The ordinance also prohibited city employees from managing, or soliciting contributions for, any partisan political campaigns. These were the only provisions before the Fifth Circuit. The court held that these were constitutional restrictions on city employees. It could find no basis for judging the validity of these provisions on the basis of whether they applied to partisan or non-partisan political activities. It found that "societal" interests could be adversely affected by unrestrained partisan or non-partisan political activities by government employees. The court identified four "societal" interests:
 "[T]he interest in an efficient government; that in a government which enjoys public confidence; that in the right of individual citizens to be free of governmental discrimination based on their political activities or connections; and that in the right of governmental employees to be free of employer pressure in their personal political decisions. The potential conditions which would be harmful or injurious to these important societal interests include the following three. First, the condition could exist in which `employment and advancement in Government service' is made to `depend on political performance' rather than on `official effort' or `meritorious performance.' This not only impairs the efficiency of government directly, by depriving it of the services of the more capable for the positions so affected, but also indirectly, by its adverse effects on employee morale. This condition is also injurious to the governmental employees' rights to be free of employer pressure to affiliate with a candidate they may personally abhor or `to perform political chores in order to curry favor with their superiors rather than to act out their own beliefs.' Moreover, this condition obviously tends to undermine public confidence in government. A second harmful condition is that of governmental employees `practicing political justice,' or exercising `political influence . . . on others,' or channeling `governmental favor' `through political connections.' Such a condition is seriously injurious to the rights of individual citizens to be free of governmental discrimination based on their political activities or connections. It also impairs public confidence in government. Governmental efficiency is also adversely affected in that governmental administration is deflected from the direct and purposeful implementation of the laws and policy choices made by those charged with that responsibility, generally the elected representatives, and is instead focused on furtherance of the political objectives of the civil servant. Third, the condition may occur under which `the political influence of federal employees' is brought to bear without restraint `on the electoral process,' or the governmental work force is employed to build a powerful `political machine.' *Page 719 
This condition undermines public confidence in government both because it tends to cast government in the light of master rather than servant of the people, and because it involves use of governmental power for purposes other than those for which the government was instituted. The latter factor also impairs governmental efficiency in the exercises of its proper purposes."
704 F.2d at 166-167.
We hold that Regulation 1.3.4.24, which restricts the department's employees from engaging in partisan politics, and the latter provision of Regulation 1.3.9.18, which forbids the use of the influence of the office for political reasons, arenot unconstitutional violations of Certain's First Amendment rights, or of his guarantees under the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States. The regulations are admittedly infringements upon his rights and subject him to treatment different from other citizens. However, when tested by the standard set out in the federal cases, it cannot be denied that the purpose of the regulations is rationally related to the important governmental and societal interests discussed in the federal cases. The City has not been unreasonable in its enforcement of these provisions. There is evidence that officers who desire to assist a political campaign or candidate, or run for office themselves, have been granted a leave of absence in order to do so, and then allowed to return to the department with no discipline or threat of discipline.
With regard to the first provision in Regulation 1.3.9.18, which prohibits the solicitation of contributions for partisan political reasons, we hold that this regulation is also constitutional.
The constitutionality of this type of regulation was first decided in Ex Parte Curtis, 106 U.S. 371, 1 S.Ct. 381,27 L.Ed. 232 (1882). Curtis argued that a federal statute, which prohibited federal employees of the executive department "from requesting, giving to, or receiving from, any other officer or employe of the government, any money or property or other thing of value for political purposes," was unconstitutional. The Supreme Court found the statute to be necessary to avoid the possibility that employment would be hinged upon a contribution to the "right" political candidate or party, rather than meritorious service. It reasoned that Congress had the power to regulate the political conduct of its employees so long as such regulation was necessary and reasonable. "The right to contribute money through fellow employees to advance the contributor's political theories was held not to be protected by any constitutional provision." United Public Workers ofAmerica v. Mitchell, 330 U.S. at 97, 67 S.Ct. at 568, discussing Ex Parte Curtis, 106 U.S. 371, 1 S.Ct. 381.
A provision more similar to the one before us, and broader than the one considered in Curtis, was upheld in Broadrick v.Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). That provision stated that "[n]o employee in the classified service [i.e., no classified state civil servant] . . . shall, directly or indirectly, solicit, receive, or in any manner be concerned in soliciting or receiving any assessment or contribution for any political organization, candidacy or other political purpose." The Supreme Court upheld the statute "at least insofar as it forbids classified employees from: soliciting contributions for partisan candidates, political parties, or other partisan political purposes." Broadrick v.Oklahoma, 413 U.S. at 616, 93 S.Ct. at 2918. It relied on another decision handed down the same day, United States CivilService Commission v. National Association of Letter Carriers,AFL-CIO, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), which upheld § 9 (a) of the Hatch Act and defined what is meant in the Act by "an active part in political management or in political campaigns." For a definition, the Court in LetterCarriers referred to a list of "Prohibited Activities," which appeared in the Civil Service Regulations. Among the forbidden activities listed was: "Directly or indirectly soliciting, receiving, collecting, handling, disbursing, or accounting for *Page 720 
assessments, contributions, or other funds for a partisan political purpose." The Supreme Court held that this provision was a valid restriction upon federal employees and was not vague or overly broad.
The regulations are challenged only as being violative of the federal Constitution. Our decision to uphold the Huntsville Police Department regulations is based upon these federal decisions. Applying the test enunciated in those cases, we do not find that the regulations are unconstitutional or overly broad. The Supreme Court in Broadrick addressed this last point. It noted that although the Oklahoma statute regulated a substantial spectrum of conduct, the acts of which the appellants were accused were clearly prohibited by the statute; therefore, it could not say that under those circumstances the act was overly broad. "We do not believe that § 818 [of the Oklahoma act] must be discarded in toto because some persons' arguably protected conduct may or may not be caught or chilled by the statute." Broadrick v. Oklahoma, 413 U.S. at 618,93 S.Ct. at 2919.
Certain testified that he wanted to "participate in political activity," while he was on the police force, but did not do so because of the regulations. This conduct clearly may be regulated by the City. There is no evidence that he intended to do, or was disciplined under the regulation for doing, something which is constitutionally protected, and which could not be regulated by the City. Furthermore, under Broadrick, Certain has no standing to raise someone else's rights, and we, accordingly, cannot strike down the regulations because "some other persons' protected conduct" may be infringed upon. Against the challenge made, we must uphold Regulations 1.3.9.18 and 1.3.4.24.
The City moved for directed verdict on each individual "claim within the § 1983 claim," including the claim that the above regulations were an unconstitutional infringement upon Certain's rights. This motion was denied, and all claims were submitted to the jury, which was instructed to return a general verdict on the § 1983 claim if it found for the plaintiff. This it did. We hold that the court erred in denying the City's motion for directed verdict on the plaintiff's claim that the Huntsville Police Department's regulations violated the federal Constitution.
In view of our holding that these regulations are not
unconstitutional infringements upon Certain's rights guaranteed under the United States Constitution and federal law, it was also error to deny the City's earlier motion to dismiss for failure to state a claim upon which relief could be granted. This error, however, would have been harmless had the trial court granted the City's motion for directed verdict.
Under Alabama law, if two claims for relief are submitted to a jury, one supported and one unsupported, by the evidence and the law, and the defective claim has been specifically challenged by a motion for directed verdict, a general verdict cannot stand. Ex Parte Nix, 401 So.2d 64 (Ala. 1981).
This rule of law is applicable to this case. It was error to deny the City's specific motion for directed verdict on the claim challenging the regulations under the federal Constitution and to submit that claim to the jury. The jury may have found that the above regulations infringed upon Certain's federal rights and based its verdict on this determination. If so, the verdict is incorrect, and the judgment entered on it must be reversed. Of course, the jury may have found that one or more of the other allegations in support of the § 1983 claim were true and rendered its verdict on that basis. Because the jury returned a general verdict on the § 1983 claim, as instructed by the court, it is impossible to know whether the verdict rests upon a proper or improper basis. Because of the possibility that the jury founded its verdict upon the claim having no basis in the law, we must reverse the judgment on the § 1983 claim. *Page 721 
We have not ruled on any of the other allegations made in support of the § 1983 claim or the contract claim, nor does our decision require us to do so. We reverse solely on the basis that the trial court improperly denied the City's motion to dismiss and motion for directed verdict on the claim that the regulations specifically quoted were violative of the United States Constitution and federal laws. We emphasize that we have not ruled on the validity of the regulations if challenged under Alabama law, because there was no challenge under state law. We feel compelled to note that the regulations discussedmay be proscribed by § 17-1-7 of the Alabama Code (1983 Supp.; formerly § 11-80-6 (1975)):
 "(a)(1) No person in the employment of any city, whether classified or unclassified, shall be denied the right to participate in county and state political activities to the same extent as any other citizen of the state of Alabama, including endorsing candidates and contributing to campaigns of his choosing.
". . .
 "(4) All persons in the employment of any city, county or state shall have the right to join local political clubs and organizations, and state or national political parties.
 "(5) All persons in the employment of any city, county or state shall have the right to publicly support issues of public welfare, circulate petitions calling for or in support of referendums, and contribute freely to those of his choosing."
That issue, however, is not before us.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, SHORES and BEATTY, JJ., concur.