705 P.2d 676

**STATE of New Mexico, ex rel. Jack HARKLEROAD, Petitioner-Appellee,**

v.

**NEW MEXICO STATE POLICE BOARD, New Mexico State Police Department, an Agency of the State of New Mexico, and Maurice Cordova, Chief of the New Mexico State Police Department, Respondents-Appellants.**

No. 15720.

Supreme Court of New Mexico.

Aug. 22, 1985.

Paul Bardacke, Atty. Gen., Robert D. Gardenhire, Asst. Atty. Gen., Nilda M. Pabon, Sp. Asst. Atty. Gen., Santa Fe, for respondents-appellants.

Joseph E. Shattuck, Santa Fe, for petitioner-appellee.

## OPINION

STOWERS, Justice.

This appeal is from the judgment of the district court reversing a decision of the New Mexico State Police Board (Board). Jack Harkleroad (Harkleroad) was suspended by Maurice Cordova (Cordova), Chief of the New Mexico State Police Department (Department) for 30 days without pay from his job as State Police Lieutenant for violating N.M. State Police Dept. Rule 134.0 (Rev. December 15, 1982). Harkleroad appealed the suspension to the Board and a hearing was conducted on March 12, 1984. Upon review of the evidence presented at the hearing, the Board sustained Harkleroad's suspension. This matter was then brought before the district court on a writ of certiorari. The district court issued an alternative writ of certiorari and conducted a hearing on the matter. The district court reversed the Board's decision. The Board, Department, and Cordova appeal. We reverse the district court.

We discuss the following issues:

1. Whether the New Mexico State Police may constitutionally regulate certain partisan political activities of its employees, on or off duty; and

2. Whether there was substantial evidence in the whole record to support the Board's conclusion that Harkleroad was engaged in political activity proscribed by Rule 134.

The pertinent facts are as follows. Sometime between March and mid-July of 1983, Harkleroad approached Cordova and told Cordova he was thinking about running for the office of Governor. Harkleroad advised Cordova he would resign from the force on September 1, 1983. Cordova in turn informed Harkleroad about Rule 134 which prohibits state police employees from engaging in certain political activities.

Harkleroad did not resign from the force on September 1, 1983; nevertheless, he continued to engage in political activity. On September 1, 1983, Cordova, while present at a political function, heard Harkleroad being introduced as a candidate for the office of governor. Harkleroad acknowledged the introduction and did not deny his candidacy. In fact, at the hearing conducted by the Board, Harkleroad admitted speaking at many political gatherings. At these gatherings he would tell the audience he was an unannounced, unofficial candidate for the governor's office.

On September 6, 1983, Cordova sent Harkleroad a written notice apprising him of Rule 134, which states:

Employees are not permitted to seek contributions for or campaign for any political candidates. Nor will any employee be permitted to run for or accept political office while employed with the Department.

Harkleroad responded, claiming that Rule 134 was vague and overbroad.

On September 23, 1983, Cordova again met with Harkleroad and provided him with guidance, direction, and interpretation of Rule 134. In a letter dated September 27, 1983, he advised Harkleroad that he did not accept his contention that Rule 134 was too broad or vague. Cordova clearly and forcefully informed Harkleroad that Rule 134 applied to off-duty as well as on-duty political activity. He then ordered Harkleroad "to refrain from being a partisan candidate for an elective office while employed by his department".

Harkleroad disregarded Cordova's order and continued to pursue his political activity. Harkleroad had printed up and circulated cards and bumper stickers which stated "Jack Harkleroad, Governor (with "86" in a Zia sun symbol) paid for by the Committee to Elect Jack Harkleroad for Governor." Cordova also read an article in the *Albuquerque Journal*, October 9, 1983, A–2, which stated that Harkleroad was "already running" for the governor's office. Furthermore, on October 11, 1983, Cordova received information that Harkleroad had been campaigning at a campaign fundraiser in Taos the previous week, and that Harkleroad had been introduced to the people present as a candidate for governor. After Cordova verified the information, he suspended Harkleroad.

We first address the issue whether the State of New Mexico and New Mexico State Police may constitutionally regulate certain partisan political activities of its employees, on or off duty.

The proposition is well-established that a government may, consistent with the First Amendment and other provisions of the Federal Constitution, place restrictions upon the political activities of its employees, including a prohibition against running for political office.

In *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 556, 93 S.Ct. 2880, 2886, 37 L.Ed.2d 796, 804 (1973), the Supreme Court stated "that neither the First Amendment nor any other provision of the Constitution invalidates a law barring ... partisan political conduct by federal employees," including becoming a partisan candidate for, or campaigning for, an elective public office.

The following cases also held that a government's action in enacting legislation

prohibiting its employees from running for public office does not in and of itself violate the First Amendment to the Federal Constitution: *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); and *Otten v. Schicker*, 655 F.2d 142 (8th Cir.1981); *State ex rel. Gonzales v. Manzagol*, 87 N.M. 230, 531 P.2d 1203 (1975).

■ Therefore the Board, which derives its authority to promulgate rules from NMSA 1978, Section 29–2–22 (Repl.Pamp. 1984), can constitutionally prohibit a state police employee from running for or accepting a political office.

■ Furthermore, Rule 134 is neither vague nor overbroad as Harkleroad would have us believe. In *Letter Carriers*, the Supreme Court stated that neither the First Amendment nor any other provision of the Constitution would invalidate a law specifically barring, in plain and understandable language, particular types of partisan political conduct by federal employees. Therefore, as long as the rule "[is] set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with ..." it is not unconstitutionally vague. 413 U.S. at 579, 93 S.Ct. at 2897, 37 L.Ed.2d at 816.

In this case, there is nothing vague about Rule 134. It explicitly states which types of political activity are not permissible. "It cannot be seriously argued that men of common intelligence must necessarily guess at its meaning." *Otten*, 655 F.2d at 145 (quoting *Broadrick*, 413 U.S. at 607, 93 S.Ct. at 2913, 37 L.Ed.2d at 837).

Furthermore, Rule 134 is not fatally overbroad because it does not proscribe constitutionally protected conduct. The Supreme Court in *Letter Carriers*, 413 U.S. at 567, 93 S.Ct. at 2891, 37 L.Ed.2d at 810, stated that the "right to participate in political activities [was] not absolute in any event ... [P]lainly identifiable acts of political management and political campaigning on the part of federal employees may constitutionally be prohibited."

The State of New Mexico and the New Mexico State Police have an imperative interest in prohibiting its police officers from running for an elective public office. This interest is evident when we consider that the mission of the New Mexico State Police, as set forth in NMSA 1978, Section 29–2–18 (Repl.Pamp.1984), is, among other things, to serve as conservators of the peace for the whole state. As conservators of the peace, state police officers must enforce the laws in an impartial and uniform manner. There can be no situations where there may be an appearance of favoritism in dealing with the public or enforcing the laws. There can be no situation where a state policeman is linked to organized political activity or appears to devote less than full attention to necessary duties because of political involvement.

A state police officer's appearance and conduct must be fair, honest, and above reproach or question. A state police officer occupies a special place in our society, a place of trust, honor, and dignity, and few are chosen. Properly enacted rules and regulations have the force and effect of law, and who, more so than a police officer, should be expected to give example for lawful behavior?

■ We next address the issue whether there was substantial evidence in the whole record to support the Board's conclusion that Harkleroad was engaged in political activity proscribed by Rule 134.

In *Duke City Lumber Co. v. New Mexico Environmental Improvement Board*, 101 N.M. 291, 681 P.2d 717 (1984) we supplemented the substantial evidence rule with the whole record standard for judicial review of findings of fact made by administrative agencies.

The whole record in this case is replete with evidence that Harkleroad was engaged in political activity prohibited by Rule 134. Specifically, Harkleroad was a candidate for the governor's office, a candidate being defined in *Black's Law Dictionary* 187 (5th ed. 1979) as, "[o]ne who seeks or offers himself or is put forward

by others, for an office, privilege or honor." Although Harkleroad may have considered himself to be an unofficial candidate for the governor's office, this does not change the fact that he was running for public office in violation of Rule 134.

For the above reasons, we reverse the decision of the district court, and reinstate the decision of the Board.

IT IS SO ORDERED.

RIORDAN and WALTERS, JJ., concur.