371 S.E.2d 602

**Robert DEEDS**

v.

**Albert LINDSEY, Sheriff of Greenbrier County, West Virginia; W.W. McClung, Charles M. Long and Joe Feamster, County Commissioners of Greenbrier County, West Virginia; Dalton Elmore, Henry Riffe and Harold Weikle, Members of Deputy Sheriffs' Civil Service Commission.**

**No. CC975.**

Supreme Court of Appeals of West Virginia.

July 7, 1988.

---

Gordon T. Ikner, Lewisburg, for Deeds.

Richard H. Lorensen, PA, Lewisburg, for Lindsey, et al.

McHUGH, Chief Justice:

This case is before this Court upon questions certified by order of the Circuit Court of Greenbrier County. The proceedings below involved a mandamus action filed by the appellee to compel the appellants to grant him a leave of absence to run for sheriff, and if his pursuit of the office was unsuccessful, to reinstate him to his previous classification with full restoration of benefits and rank. This Court has before it the petition for appeal, all matters of record and the briefs of counsel.

The appellants, the defendants below, are Albert Lindsey, Sheriff of Greenbrier County, West Virginia, W.W. McClung, Charles M. Long and Joe Feamster, County Commissioners of Greenbrier County, and Dalton Elmore, Henry Riffe and Harold Weikle, members of the Deputy Sheriffs' Civil Service Commission.

The appellee, the plaintiff below, is Robert Deeds, a deputy sheriff of Greenbrier County.

I

By letter dated November 19, 1987, the appellee requested an order of the Green-

brier County Deputy Sheriffs' Civil Service Commission granting him a leave of absence to run for the office of sheriff in an upcoming election.[1] The letter further requested that he be guaranteed reinstatement to full benefits and rank should his candidacy fail.

The basis for the appellee's request was a change in state law pertaining to state civil service employees which allowed for an employee's leave of absence without pay for the period of his or her candidacy. *See* note 4, *infra.* Because the County Commission and the Deputy Sheriffs' Civil Service Commission were unsure what effect, if any, the aforementioned change in the law would have upon deputy sheriffs specifically, they indicated by letter that they could not guarantee the appellee reinstatement to full benefits and rank.

The trial court, treating the response of the appellee and appellants as a motion for summary judgment to have the action dismissed, denied the motion and framed the following questions for certification to this Court, all of which were answered in the affirmative by the court below:

(1) Is mandamus proper under the circumstances of this case?

(2) Does the fundamental interest of the public's right to vote and a person's first amendment right of expression and association by becoming a candidate for local office require a strict equal protection review of West Virginia Code 7–14–15(a) and related regulations which statute and regulations prohibit the exercise of such rights?

(3) Is a county deputy sheriff denied equal protection of the law when he is prohibited by West Virginia Code 7–14–15(a) and related civil service commission regulations from becoming a partisan candidate for local public office while the general public and state civil service covered employees (under West Virginia Code 29–6–20) are permitted to become such candidates?

(4) Is a county deputy sheriff denied equal protection of the law when he is not permitted a leave of absence (with the right to return to his same position if he is not successful) to become a partisan candidate for local public office while state employees covered by civil service (under West Virginia Code 29–6–20) are permitted leaves of absence to become such candidates?

## II

### STANDARD OF SCRUTINY

*W. Va. Code*, 7–14–15(a) [1971] provides in pertinent part:

[N]o deputy sheriff covered by the provisions of this article shall engage in any political activity of any kind, character or nature whatsoever, except to cast his vote at any election or shall act as an election official in any municipal, county or state election. Any deputy sheriff violating the provisions of this section shall have his appointment vacated and he shall be removed, in accordance with the pertinent provisions of this section.

The appellants maintain that the governmental interests underlying *W. Va. Code*, 7–14–15(a) [1971] outweigh the constitutional rights of a civil service deputy sheriff seeking to run for office, and it is thus unnecessary to review the aforementioned statute under a strict equal protection standard.

The appellee, on the other hand, asserts that the statute infringes on two of his fundamental first amendment freedoms: the freedom of expression and the freedom of association. He thereby contends that candidacy for a public office is a federally protected first amendment right touching on the above freedoms and that strict scrutiny applies in considering the constitutionality of the statute. We agree with the appellee that strict scrutiny applies, but for different reasons hereinafter stated.[2]

---

1. This letter was also addressed to Albert Lindsey, the current Sheriff of Greenbrier County and to the County Commissioners of Greenbrier County.

2. For reasons more fully stated herein, we decline to address the certified questions in the precise manner in which they are formulated to us. This Court has traditionally maintained that "upon receiving certified questions we re-

■ It is well established that where a fundamental, constitutional right is involved and an equal protection challenge is made, the State's action is given strict scrutiny, and the State must advance a compelling state interest to uphold the discriminatory classification.[3] *State ex rel. Board of Education v. Manchin,* 179 W.Va. 235, 240, 366 S.E.2d 743, 748 (1988); *State ex rel. Longanacre v. Crabtree,* 177 W.Va. 132, 135 n. 4, 350 S.E.2d 760, 763 n. 4 (1986); *State ex rel. Piccirillo v. City of Follansbee,* 160 W.Va. 329, 333, 233 S.E.2d 419, 422 (1977); *White v. Manchin, infra.* This Court has frequently recognized that "the right to become a candidate for public office is a fundamental right, and that any restriction on the exercise of this right must serve a compelling state interest." *White v. Manchin,* 173 W.Va. 526, 543, 318 S.E.2d 470, 488 (1984); *see also Marra v. Zink,* 163 W.Va. 400, 404, 256 S.E.2d 581, 584 (1979); syl. pt. 1, *State ex rel. Piccirillo v. City of Follansbee,* 160 W.Va. 329, 233 S.E.2d 419 (1977); *State ex rel. Maloney v. McCartney,* 159 W.Va. 513, 517, 223 S.E.2d 607, 611 (1976); *State ex rel. Brewer v. Wilson,* 151 W.Va. 113, 121, 150 S.E.2d 592, 597 (1966). Accordingly, the State must advance a compelling state interest in order to sustain the constitutionality of *W.Va.Code,* 7–14–15(a) [1971] which infringes on the fundamental right of a deputy sheriff to seek candidacy for a public office.

## III

## EQUAL PROTECTION ANALYSIS

We now consider whether the appellants have advanced a compelling state interest justifying the restrictive provisions of *W.Va.Code,* 7–14–15(a) [1971], which infringe on the appellee's fundamental right to seek candidacy for a public office.

Principally, the appellee argues that *W.Va.Code,* 7–14–15(a) [1971] violates equal protection guarantees because the statute impermissibly precludes deputy sheriffs from becoming candidates for local public office while other state civil service employees, pursuant to *W.Va.Code,* 29–6–20 [1983], are permitted to be such candidates.[4] On the other hand, the appellants contend that state civil service employees are a distinct class from civil service county deputy sheriffs and that these distinctions permit the classes to be treated in a dissimilar fashion.

---

tain some flexibility in determining how and to what extent they will be answered." *City of Fairmont v. Retail, Wholesale, & Department Store Union,* 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590 (1980).

With regard to the second certified question, we analyze *W.Va.Code,* 7–14–15(a) [1971] under well established equal protection principles regarding the right to candidacy, rather than under the first amendment principles of freedom of association and freedom of expression.

Moreover, because certified questions three and four are so closely related, they will be considered together. The first certified question regarding mandamus as a remedy will be discussed thereafter.

3. The federal equal protection mandate is found in the fourteenth amendment to the *Constitution of the United States,* and it provides in pertinent part: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." Our State *Constitution*'s equal protection mandates are found in article III, section 10 and article III, section 17. *See State ex rel. Board of Education v. Manchin,* 179 W.Va. 235, 240 n. 9, 366 S.E.2d 743, 748 n. 9 (1988). Respectively, their pertinent provisions state: "No person shall be deprived of life, liberty, or property, without due process of law[,]" [article III, section 10], and "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." [article III, section 17].

4. *W.Va.Code,* 29–6–20 [1983] provides in pertinent part:

(a) No person shall be appointed or promoted to or demoted or dismissed from any position in the classified service or in any way favored or discriminated against with respect to such employment because of his political or religious opinions or affiliations or race;

. . .

. . . .

(g) Any classified employee who becomes a candidate for any paid public office as permitted by this section shall be placed on a leave of absence without pay for the period of such candidacy, commencing upon the filing of the certificate of candidacy and upon such other terms and conditions as may be prescribed by legislative rule[.]

It is well established that a government may place restrictions upon the political activities of its employees, consistent with federal and state constitutional protections, including a prohibition against running for political office. *See United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Weaver v. Shaffer*, 170 W.Va. 107, 290 S.E.2d 244 (1980); *see also State ex rel. Harkleroad v. New Mexico State Police Board*, 103 N.M. 270, 705 P.2d 676 (1985). *Cf. Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) (upholding constitutionality of laws requiring automatic resignation of political office holders seeking other offices, against equal protection challenge).

This Court considered the constitutionality of *W.Va.Code*, 7–14–15(a) [1971] in *Weaver v. Shaffer*, 170 W.Va. 107, 290 S.E.2d 244 (1980). The essence of the appellant's argument in *Weaver* was that the statute denied his constitutional right to free political expression because it was impermissibly broad in its scope. Following *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), and *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), this Court in *Weaver* determined that civil service statutes which are overbroad may be cured by authoritative, narrowing interpretations. This Court then noted, citing *Letter Carriers, supra*, that a statute which is facially unconstitutional need not be destroyed, but if possible, such statute should be judicially construed so as to comport with constitutional limitations. *Id.* 170 W.Va. at 111, 290 S.E.2d at 248. In syllabus point 1 of *Weaver*, the Court held that *W.Va.Code*, 7–14–15(a) [1971] proscribes, *inter alia*, becoming a partisan candidate for an elective public office.

In so holding, this Court emphasized that if it were not to interpret the statute as it did and were to strike the proscription on political activity while leaving intact civil service protection, there would then be a classified civil service which was entirely free to participate in the most robust manner in the political process. *Id.* 170 W.Va. at 112, 290 S.E.2d at 249. Certainly, this would undermine the public's confidence in the administration of the county's law enforcement.

Our research has revealed that in considering whether police department regulations or statutes prohibiting law enforcement officers from engaging in certain political activities, including running for office, were violative of equal protection principles, several jurisdictions have upheld the constitutionality of such restrictions, notwithstanding the fact that these proscriptions applied only to law enforcement officers as opposed to other public employees or the citizenry in general. *See* annotation, *Validity, Construction, and Effect of State Statutes Restricting Political Activities of Public Officers or Employees*, 51 A.L.R. 4th 702, § 22[c] (1987).

In *City of Huntsville v. Certain*, 453 So.2d 715 (Ala.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3499, 87 L.Ed.2d 631 (1985), the Supreme Court of Alabama determined that a police department regulation which prohibited department members from engaging in partisan political activities did not infringe upon the plaintiff's rights under the equal protection clause of the fourteenth amendment to participate in the electoral process with the citizenry in general. Conceding that the regulations were admittedly infringements upon his rights and subjected him to treatment different from other citizens, the court nevertheless stated that it could not be denied that the purpose behind these regulations was rationally related to important governmental and societal interests.

Quoting the language of the Fifth Circuit Court of Appeals in *Wachsman v. City of Dallas*, 704 F.2d 160, 166–67 (5th Cir.), *cert. denied*, 464 U.S. 1012, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983), the court identified the following societal interests which could be adversely affected by unrestrained partisan or nonpartisan political activities by government employees:

[T]he interest in an efficient government; that in a government which enjoys

public confidence; that in the right of individual citizens to be free of governmental discrimination based on their political activities or connections; and that in the right of governmental employees to be free of employer pressure in their personal political decisions. The potential conditions which would be harmful or injurious to these important societal interests include the following three. First, the condition could exist in which "employment and advancement in Government service" is made to "depend on political performance" rather than on "official effort" or "meritorious performance." ... A second harmful condition is that of governmental employees "practicing political injustice," or exercising "political influence, ... on others," or channeling "governmental favor" "through political connections." ... Third, the condition may occur under which "the political influence of [civil service] employees" is brought to bear without restraint "on the electoral process," or the governmental work force is employed to build a powerful "political machine." '

453 So.2d at 718.

The Eighth Circuit Court of Appeals has held that a police department regulation which prohibited officers from running for public office did not infringe upon the officer's constitutional right to equal protection. *Otten v. Schicker*, 655 F.2d 142, 146 (8th Cir.1981). The plaintiff's principal contention was that the regulation was violative of equal protection because the restriction applied only to police department employees and not other city public employees. The court emphasized that the Missouri legislature had authorized the city's Board of Police Commissioners to adopt and enforce rules and regulations governing the employment, discipline and government of its police officers and that the restriction on the candidacy of police officers was reasonably related to that legislative grant of power.

Generally, courts considering whether law enforcement officers can be constitutionally prohibited from engaging in political activities have recognized that these particular government employees occupy a unique position in our society. *See, e.g., Reeder v. Kansas City Board of Police Commissioners*, 733 F.2d 543, 547 (8th Cir. 1984), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 1000 (1987); *Lecci v. Looney*, 33 A.D.2d 916, 917, 307 N.Y.S.2d 594, 595 (1970); *State ex rel. Harkleroad v. New Mexico State Police Board*, 103 N.M. at 272, 705 P.2d at 678.

It is clear from our discussion of the cases cited above that public employees, particularly law enforcement officers, are subject to more severe restrictions than the public at large. Surely people who enter public service receive certain benefits, but they simultaneously undertake certain duties as well. This is especially true in the case of deputy sheriffs and other law enforcement officers whose duty is to keep the peace. It is fundamental that "[a] state may demand of its [deputy sheriffs] a more exacting standard of conduct than it could validly impose ... on citizens in general." *Vorbeck v. Sch[n]icker*, 660 F.2d 1260, 1267 (8th Cir.1981) (Arnold, J., concurring), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982). *See also Reeder v. Kansas City Board of Police Commissioners, supra.*

Despite the preferred position of the fundamental right to candidacy which we have recognized, this right must yield when the State can advance a compelling state interest to justify a restriction on candidacy, such as in this case, the demands of public safety and the need for efficient administration of justice through county law enforcement. *Id.* As conservators of the peace, deputy sheriffs must enforce the laws of this State in an impartial and uniform manner. An appearance of favoritism in dealing with the public or enforcing the law cannot be tolerated. *See State ex rel. Harkleroad v. New Mexico State Police Board*, 103 N.M. at 272, 705 P.2d at 678. A deputy sheriff's conduct must be fair, honest and above reproach. *Id.; Reeder, supra.* We are of the opinion that *W.Va.Code*, 7–14–15(a) [1971] is conducive to the effective maintenance of discipline and the preservation and promotion of the

integrity of the county sheriff's department and its personnel. *See Lecci v. Looney, supra.*

We believe that this state interest coupled with the societal interests in preserving an efficient sheriff's department which impartially serves the public while enjoying its confidence constitute a compelling state interest which justifies the distinct treatment of deputy sheriffs by *W. Va. Code,* 7-14-15(a) [1971].

We are of the opinion that granting a deputy sheriff a leave of absence with the right to return to the position with full reinstatement of benefits and rank in the event his or her candidacy was unsuccessful would also be problematic for the administration of the county's law enforcement and may be prohibited. Allowing a deputy sheriff to take such a leave of absence would surely be incompatible with the efficient administration of justice. The State's compelling interest in preserving and promoting the public's safety could be impaired if deputy sheriffs were routinely granted leaves to run for office. The administration of justice would be impaired particularly in sparsely populated counties with a small number of deputies; these counties would undoubtedly experience difficulty in replacing a deputy sheriff on a possibly temporary basis. Deputy sheriffs should be highly trained law enforcement officers, *see W. Va. Code,* 7-14-16 [1971] and 7-14-9 [1972], who are not easily replaced, especially on a possibly temporary basis, as would be the case if a potential candidate were unsuccessful. Moreover, we have recognized that it is incumbent upon a sheriff to ensure that each deputy is adequately trained and supervised, and failing in this, a sheriff may be vicariously liable for the tortious acts of his or her deputies, which result from a lack of training or supervision. *Mozingo v. Barnhart,* 169 W.Va. 31, 35, 285 S.E.2d 497, 499 (1981).

Regarding the distinctions made by the legislature in distinguishing deputy sher-

iffs from other civil service employees, we find the language of the United States Supreme Court in *Broadrick v. Oklahoma,* 413 U.S. 601, 607 n. 5, 93 S.Ct. 2908, 2913 n. 5, 37 L.Ed.2d 830, 837 n. 5 (1973), persuasive: "[T]he legislature must have some leeway in determining which of its employment positions require restrictions on partisan political activities and which may be left unregulated. . . . [A] State can hardly be faulted for attempting to limit the positions upon which such restrictions are placed." *See also Clements v. Fashing,* 457 U.S. 957, 969, 102 S.Ct. 2836, 2847, 73 L.Ed.2d 508, 520 (1982).

 Based upon the foregoing, a deputy sheriff is not denied equal protection of the law when he or she is prohibited from becoming a candidate for public office pursuant to *W. Va. Code,* 7-14-15(a) [1971], nor is a deputy sheriff denied equal protection of the law when he or she is not permitted a leave of absence to become such a candidate, notwithstanding the provisions of *W. Va. Code,* 29-6-20 [1983] which guarantees these rights to other state civil service employees, because there is a compelling state interest in prohibiting deputy sheriffs from seeking candidacy for public office, *W. Va. Const.* art. III, §§ 10 and 17.

## IV

### MANDAMUS AS A REMEDY

In regard to the first certified question, the appellee maintains that a writ of mandamus lies in this case because the appellants have failed to discharge a nondiscretionary duty, specifically, granting the appellee a leave of absence to run for office with a guaranteed reinstatement to full benefits and rank. The appellee also asserts that in election proceedings, this Court has somewhat relaxed the procedural rigor required in an ordinary mandamus case, and that accordingly, mandamus is proper in the case now before us.[5] We do not believe mandamus lies in this case.

---

5. We note that *W. Va. Code,* 3-1-45 [1963] provides for court proceedings to compel performance by officers and persons charged with election duties under the "West Virginia Election

Code." *See Carr v. Lambert,* 179 W.Va. 277, 278 n. 1, 367 S.E.2d 225, 226 n. 1 (1988). In pertinent part, the statute instructs that "[a]ny officer or person, upon whom any duty is devolved

The law in this State is well settled as to when mandamus lies: "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of the respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969); *accord*, syl. pt. 2, *United Mine Workers v. Faerber*, 179 W.Va. 65, 365 S.E.2d 345 (1986); syl. pt. 1, *Rogers v. Hechler*, 176 W.Va. 713, 348 S.E.2d 299 (1986); syl. pt. 3, *Craigo v. Hey*, 176 W.Va. 514, 345 S.E.2d 814 (1986); syl. pt. 3, *Kimes v. Bechtold*, 176 W.Va. 182, 342 S.E.2d 147 (1986) (and cases collected at 152).

■ Based upon the foregoing, we are of the opinion that a writ of mandamus does not lie in the case now before us. In this case, the appellants had no clear legal duty to grant the leave of absence requested by the appellee. To the contrary, as discussed in section III of this opinion, such action would have been improper.

Moreover, this Court has repeatedly held that "[a] peremptory writ of mandamus will issue to require the discharge by a public official of a non-discretionary duty." Syl. pt. 4, *Glover v. Sims*, 121 W.Va. 407, 3 S.E.2d 612 (1939); *see also* syl. pt. 4, *Rogers v. Hechler*, 176 W.Va. 713, 348 S.E.2d 299 (1986); *Allen v. West Virginia Human Rights Commission*, 174 W.Va. 139, 147 n. 10, 324 S.E.2d 99, 107 n. 10 (1984). Again, based upon our discussion *supra* in section III of this opinion, the decision as to whether the appellants should grant the appellee the desired leave of absence was not nondiscretionary, but pursuant to

by this chapter, [West Virginia Election Code] may be compelled to perform the same by writ of mandamus."

This Court has consistently held that the eligibility of a candidate for an elective office may be determined in a proceeding in mandamus. *Carr, supra;* syl. pt. 2, *White v. Manchin*, 173 W.Va. 526, 318 S.E.2d 470 (1984); *State ex rel. Rushford v. Meador*, 165 W.Va. 48, 49 n. 1, 267 S.E.2d 169, 170 n. 1 (1980). The case now

*W. Va. Code*, 7–14–15(a) [1971], was statutorily prohibited.

Having answered the certified questions, we dismiss this case from the docket of this Court.

Certified questions answered.

before us is distinguishable from those cited above because this is not a mandamus proceeding specifically suited to test the eligibility of a candidate to hold an office. The appellee herein may run for office but may be deprived of civil service protection should he choose to pursue his candidacy. Thus, the cases establishing the appropriateness of mandamus as a remedy in the context of political eligibility are not applicable to the case now before us.