724 S.E.2d 783

**STATE of West Virginia ex rel., Donna J. BOLEY, Petitioner**

**v.**

**Natalie E. TENNANT, Secretary of State of the State of West Virginia, and Frank Deem, Respondents.**

No. 12–0185.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 29, 2012.

Decided April 12, 2012.

Anthony J. Majestro, Esq., Powell & Majestro, PLLC, Charleston, WV, for Petitioner Boley.

Benjamin L. Bailey, Esq., Jonathan S. Deem, Esq., Bailey & Glasser, LLP, Charleston, WV, for Respondent Deem.

Darrell V. McGraw, Jr., Attorney General, Thomas W. Rodd, Esq., Assistant Attorney General, Charleston, WV, for Respondent Secretary of State.

KETCHUM, Chief Justice:

Donna J. Boley ("Petitioner") filed a petition asking for a writ of mandamus directed to Respondents Natalie E. Tennant, Secretary of State of West Virginia ("Secretary"), and Frank Deem ("Mr. Deem"). The Petitioner, from Pleasants County, is an incumbent state senator seeking re-election for the Third Senatorial District ("District 3"). Mr. Deem seeks to challenge the Petitioner for the Republican Party's 2012 nomination. He has been certified as eligible by the Secretary to have his name placed on the ballot.

The Petitioner has filed this petition challenging Mr. Deem's eligibility to be a candidate for state senator against her. She asserts that Mr. Deem does not meet the residency requirements contained in Article VI, Section 4, of the *Constitution of West Virginia*, and the Senate Redistricting Act of 2011, *W.Va.Code* § 1–2–1 *et seq.* Mr. Deem concedes that a plain reading of the residency requirements makes him ineligible to be a candidate for state senator in District 3 during the 2012 election cycle. However, Mr. Deem argues that the residency requirements should be declared unconstitutional.

We find that the residency requirements are constitutional and grant the requested writ.[1]

## I. Factual Background

The Senate Redistricting Act of 2011 establishes seventeen senatorial districts in the State of West Virginia, with each district having two state senators serving staggered four-year terms. The Third Senatorial District ("District 3") encompasses all of Wood, Pleasants and Wirt Counties, and a portion of Roane County. District 3's incumbent senators are David C. Nohe ("Senator Nohe"), from Wood County, and the Petitioner, from Pleasants County. Senator Nohe's term expires in 2014; however, the Petitioner's term of office expires at the end of the current 2012 election cycle.

The Petitioner filed with the Secretary her formal announcement[2] that she will seek re-nomination for her office at the Republican Party's May 2012 primary election. Mr. Deem[3] has also filed with the Secretary his announcement, thereby making clear his intent to challenge the Petitioner for the Republican Party's nomination. The Secretary certified[4] the candidacies of the Petitioner and Mr. Deem, thereby making both candidates eligible to have their names placed upon the Republican Party's May 2012 primary election ballot.

The Petitioner contacted the Secretary and requested that she withdraw her certification of Mr. Deem's candidacy. The Petitioner asserted that Mr. Deem's candidacy was contrary to the residency requirements contained in Article VI, Section 4, of the *Constitution of West Virginia*, and in the Senate Redistricting Act of 2011, which prohibit both of a district's senators being chosen from the same county when the district is composed of more than one county. The Petitioner noted that District 3 is composed of all or part of four counties; that its other incumbent senator, Senator Nohe, was a resident of Wood

---

1. On February 27, 2012, this Court issued a Rule to Show Cause, and oral arguments were heard on February 29, 2012. At argument, the Secretary requested a prompt ruling from this Court, stating that a decision would be necessary by March 2, 2012, because after that date the May primary election ballots would be printed (listing the names of all candidates certified by the Secretary, including Mr. Deem). Subsequent to the arguments, this Court entered an order granting the Petitioner's requested writ. We now issue this opinion to explain the basis for our February 29, 2012, order.

2. The filing of a certificate of announcement is required by *W.Va.Code,* § 3–5–7 [2009]. Subsection (a) states that: "Any person who is eligible and seeks to hold an office or political party position to be filled by election in any primary or general election ... shall file a certificate of announcement declaring his or her candidacy for the nomination or election to the office." Subsection (b)(1) requires candidates for state senate to file their certificates with the Secretary.

3. Mr. Deem is a former state senator for District 3, and was defeated in his bid for re-election in the 2010 election cycle by Senator Nohe.

4. *W.Va.Code,* § 3–5–9 [2005], requires the Secretary to certify "names of all candidates, who have filed announcements with him or her, as provided in this article, and who are entitled to have their names printed on any political party ballot, in accordance with the provisions of this chapter[.]"

County; and that Senator Nohe's office is not on the ballot in the 2012 election cycle. Therefore, the Petitioner argued, Mr. Deem—also a resident of Wood County— could not be seated even if elected because that would result in both of District 3's senators being chosen from Wood County.

The Secretary refused to withdraw her certification of Mr. Deem's candidacy and stated that she only determines whether a candidate has properly completed and filed candidacy papers, and that it is not her responsibility to make determinations of a candidate's residency eligibility. Following the Secretary's refusal, the Petitioner filed her petition with this Court seeking a writ of mandamus directing the Secretary to withdraw her certification of Mr. Deem's candidacy.

Mr. Deem argues that the residency provisions contained in Article VI, Section 4, of the *Constitution of West Virginia* and the Senate Redistricting Act of 2011, violate his rights, as well as the rights of other residents living within District 3. In his brief, Mr. Deem states that he bases his challenge

> on the First and Fourteenth Amendments to the United States Constitution, the freedoms of speech and association guaranteed under Sections 7 and 16 of Article III of the West Virginia Constitution, the equal protection principles of Section 10 of Article III of the West Virginia Constitution, and the right of political participation guaranteed under Section 1 of Article IV of the West Virginia Constitution.

Mr. Deem contends that the residency provisions "minimize or cancel out the voting strength of independents and minority parties[.]" Mr. Deem acknowledges that previous decisions of this and other courts recognize that residency requirements serve the public's interest, but argues that his "challenge is not based on equal protection principles involving voter dilution." Instead, he argues that the "strength of [his] case lies in the fact that the residency ... restrictions are an unconstitutional burden on the rights of candidates and voters in District 3 under the line of First Amendment and equal [protection] cases pertaining to ballot access."

## II. Standard of Review

■ This action is before this Court pursuant to our "original jurisdiction of proceedings in habeas corpus, mandamus, prohibition and certiorari." Article VIII, Section 3, in part, of the *Constitution of West Virginia.* In Syllabus Point 2 of *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969), we set forth our standard of review for mandamus proceedings:

> A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

## III. Discussion

### A. *Writ of Mandamus*

The Petitioner seeks a writ of mandamus directing the Secretary: (1) to withdraw her certification of Mr. Deem's candidacy for state senator in District 3; (2) to command that Mr. Deem's name be removed from all official ballots, ballot cards, or ballot labels, which may be used in the May 2012 Republican party primary election; and (3) to further command that all appropriate balloting officials disregard, and otherwise refrain from certifying any votes that may be cast for Mr. Deem in the May 2012 Republican primary for state senator in District 3.

This Court has held that a writ of mandamus is an extraordinary form of relief "designed to remedy miscarriages of justice" and that it will be "used sparingly and under limited circumstances." *State ex rel. Cooper v. Tennant,* —— W.Va. ——, ——, —— S.E.2d ——, —— (2012). *See also,* Rule 16, *Revised Rules of Appellate Procedure* [2010] ("Issuance by the Court of an extraordinary writ is not a matter of right, but of discretion sparingly exercised.")

■ We have also held that the writ of mandamus is an appropriate means by which to challenge the eligibility of a candidate for public office:

> In West Virginia a special form of mandamus exists to test the eligibility to office

of a candidate in either a primary or general election. The proper party respondent in such special action in mandamus is the Secretary of State of the State of West Virginia in the case of an office to be filled by the voters of more than one county or the clerk of the circuit court in the case of an office to be filled by the voters of one county, and this action in mandamus, being a special creation of the evolving common law, is ripe for prosecution immediately upon a candidate's filing of his certificate of candidacy.

Syllabus Point 5, *State ex rel. Maloney v. McCartney*, 159 W.Va. 513, 223 S.E.2d 607, 616 (1976), *appeal dismissed sub nom. Moore v. McCartney*, 425 U.S. 946, 96 S.Ct. 1689, 48 L.Ed.2d 190 (1976). We explained in *Maloney* the need for "some method of averting a void or voidable election" and that "some form of proceeding must be available by which interested parties may challenge in advance of a primary or general election the eligibility of questionable candidates in order to assure that elections will not become a mockery." *Maloney*, 159 W.Va. at 527, 223 S.E.2d at 616.

■ This Court is cognizant of the fact that election disputes very often demand expedited resolutions, and typically arise under circumstances allowing only a few days (and in some cases only a few hours) for the dispute to be resolved. In recognition of this compressed time frame, we do not require the same degree of procedural rigor as we would in an ordinary mandamus case:

> Because there is an important public policy interest in determining the qualifications of candidates in advance of an election, this Court does not hold an election mandamus proceeding to the same degree of procedural rigor as an ordinary mandamus case.

Syllabus Point 2, *State ex rel. Bromelow v. Daniel*, 163 W.Va. 532, 258 S.E.2d 119 (1979). Nevertheless, it remains an essential requirement that all "[p]etitioners in mandamus must have a clear legal right to the relief sought therein and such right cannot be established in the proceeding itself." Syllabus Point 1, *Kucera, supra.*

■ Finally, it is clear that a court may, by writ of mandamus, direct that a candidate be removed from the ballot when that candidate has been determined to be ineligible for the office he or she sought:

> The eligibility of a candidate for an elective office may be determined in a proceeding in mandamus and, upon a determination therein that a candidate is ineligible to be elected to or to hold the office for which he seeks nomination or election, a writ of mandamus will issue directing the board of ballot commissioners to strike or omit such candidate's name from the primary or general election ballot.

Syllabus Point 1, *State ex rel. Summerfield v. Maxwell*, 148 W.Va. 535, 135 S.E.2d 741 (1964). While Syllabus Point 1 of *Summerfield* references the writ being issued to the board of ballot commissioners, our precedent makes clear that a writ will also issue to the Secretary of State. *See e.g.*, Syllabus Point 5, *State ex rel. Maloney v. McCartney, supra* (". . . The proper party respondent in such special action in mandamus is the Secretary of State of the State of West Virginia in the case of an office to be filled by the voters of more than one county[.]").

With this summary in mind, we turn to the constitutional issues raised by Mr. Deem, and whether the Petitioner has a clear legal right to the writ requested.

### B. *Constitutional Issues*

■ Mr. Deem contends that the residency requirements contained in Article VI, Section 4, of the *Constitution of West Virginia*, and the residency provisions contained in the Senate Redistricting Act of 2011, violate the First [5] and Fourteenth [6] Amendments to the *Constitution of the United States*, as well as

---

5. The First Amendment to the *Constitution of the United States* provides, in part, that "Congress shall make no law . . . abridging the freedom of speech, . . .; or the right of the people to peaceably assemble, and to petition the Government for a redress of grievances."

6. Section 1 of the Fourteenth Amendment to the *Constitution of the United States* provides, in part, that "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

his, and other District 3 residents' "freedoms of speech and association guaranteed under Sections 7 [7] and 16 [8] of Article III of the West Virginia Constitution, the equal protection principles of Section 10 [9] of Article III of the West Virginia Constitution, and the right of political participation guaranteed under Section 1 [10] of Article IV of the West Virginia Constitution."

Article VI, Section 4 of the *Constitution of West Virginia,* provides that

> [f]or the election of senators, the state shall be divided into twelve senatorial districts, which number shall not be diminished, but may be increased as hereinafter provided. *Every district shall elect two senators, but, where the district is composed of more than one county, both shall not be chosen from the same county.* The districts shall be compact, formed of contiguous territory, bounded by county lines, and, as nearly as practicable, equal in population, to be ascertained by the census of the United States. *After every such census, the Legislature shall alter the senatorial districts, so far as may be necessary to make them conform to the foregoing provision.* [Emphasis added.].

Section 4's residency requirement for multicounty senatorial districts is also found in subsection (e) of Section 1 of the Senate Redistricting Act of 2011 (which was enacted following the 2010 census as required by Section 4), and states, in relevant part, that

> ... where a senatorial district is composed of more than one county, both senators for such district shall not be chosen from the

same county, a residency ... provision which is clear with respect to senatorial districts which follow county lines, as required by such constitution, but which is not clear in application with respect to senatorial districts which cross county lines. However, in an effort to adhere as closely as possible to the West Virginia Constitution in this regard, the following additional provisions, in furtherance of the rationale of such residency ... provision and to give meaning and effect thereto, are hereby established:

> (1) With respect to a senatorial district which is composed of one or more whole counties and one or more parts of another county or counties, no more than one senator shall be chosen from the same county or part of a county to represent such senatorial district[.]

*W.Va.Code,* § 1–2–1(e) and (e)(1) [2011].

More importantly, *W.Va.Code,* § 1–2–1(f), states that "no person may file a certificate of candidacy for election from a senatorial district ... if he or she resides in the same county and the same such senatorial district wherein also resides an incumbent senator[.]"

■ Mr. Deem is correct that we have recognized that the right to become a candidate for public office is fundamental in nature, and that restrictions on the exercise of that right must serve a compelling state interest.[11] What Mr. Deem fails to accept is that the utilization of

> [multi-member] districts has existed in the State of West Virginia for almost a century

---

7.  Article III, Section 7 of the *Constitution of West Virginia,* provides, in part, that: "No law abridging the freedom of speech ... shall be passed[.]"

8.  Article III, Section 16 of the *Constitution of West Virginia,* provides that: "The right of the people to assemble in a peaceable manner, to consult for the common good, to instruct their representatives, or to apply for redress of grievances, shall be held inviolate."

9.  Article III, Section 10, of the *Constitution of West Virginia,* provides that: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

10. Article IV, Section 1, of the *Constitution of West Virginia* provides, in part, that: "The citizens of the state shall be entitled to vote at all elections held within the counties in which they respectively reside; but no person ... who has

not been a resident of the state and of the county in which he offers to vote, for thirty days next preceding such offer, shall be permitted to vote while such disability continues[.]"

11. *See e. g.,* Syllabus Point 1, *State ex rel. Picciril-lo v. City of Follansbee,* 160 W.Va. 329, 233 S.E.2d 419 (1977) ("The right to become a candidate for the office of city council is a fundamental right under the equal protection section of the *West Virginia Constitution,* Article III, Section 17, and the State, in order to restrict this right, must demonstrate that a compelling state interest is served by such restriction."). *See also White v. Manchin,* 173 W.Va. 526, 543, 318 S.E.2d 470, 488 (1984) ("This Court has frequently recognized that the right to become a candidate for public office is a fundamental right, and that any restriction on the exercise of this right must serve a compelling state interest."); *Deeds v.*

and a half and has withstood numerous constitutional challenges. There is no constitutional, statutory, or other authority prohibiting the utilization of such districts. In fact, ... several courts addressing redistricting and surrounding issues have specifically approved multi-member districts.

*State ex rel. Cooper v. Tennant, supra,* —— W.Va. at ——, —— S.E.2d at ——. We also noted in *Cooper* that residency

> requirements have been a consistent feature of legislative redistricting in West Virginia, have been upheld and have withstood equal protections challenges in numerous cases, and satisfy valid and legitimate constitutional and public policy interests.

*Id.,* —— W.Va. at ——, —— S.E.2d at ——. We further noted in *Cooper* that the use of residency requirements

> is a long-standing practice in West Virginia in multi-member districts and ... has been repeatedly approved as a valid tool of the legislative process, designed to accomplish the very types of goals Petitioners ... embrace, such as enhancing the potential for residents of a county to elect a delegate from their own county. As noted above, these considerations were addressed by the federal district court in [*Goines v. Heiskell,* 362 F.Supp. 313 (S.D.W.Va. 1973) ], quoting from the Attorney General of West Virginia's memorandum submitted in that case, as follows: " 'Residency is merely a qualification added by the Legislature in order to assure every geographic area of having a more effective voice in the Legislature. Such a residence requirement has a long well-based history in West Virginia government.' " *Heiskell,* 362 F.Supp. at 320.

*Id.,* —— W.Va. at ——, —— S.E.2d at ——.

██ Additionally, the United States Supreme Court observed in *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), that, while the "impact of candidate eligibility requirements on voters

implicates basic constitutional rights," *id.,* at 786, 103 S.Ct. at 1569 "not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates." *Id.,* at 788, 103 S.Ct. at 1569.

We find that the residency requirements contained in Article VI, Section 4 of the *Constitution of West Virginia* do not violate the Equal Protection Clause of the *Constitution of the United States.* We further find that the residency requirements contained in the Senate Redistricting Act of 2011, *W.Va. Code* § 1–2–1 *et seq.,* do not violate the freedoms of speech and association guaranteed under Sections 7 and 16 of Article III of the *Constitution of West Virginia,* the equal protection principles of Section 10 of Article III of the *Constitution of West Virginia,* or the right of political participation guaranteed under Section 1 of Article IV of the *Constitution of West Virginia.*

### IV. Conclusion

The Petitioner has demonstrated "(1) a clear legal right ... to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syllabus Point 1, in part, *State ex rel. Kucera v. The City of Wheeling, supra.* Accordingly, the writ requested is granted. The Secretary of State shall forthwith (1) withdraw her certification of Mr. Deem's candidacy for state senator in District 3; (2) command that Mr. Deem's name be removed from all official ballots, ballot cards, or ballot labels, which will be used in the May 2012 Republican party primary election; and (3) command that all appropriate balloting officials disregard, and otherwise refrain from certifying any votes that may be cast for Mr. Deem in the May 2012 Republican primary for state senator in District 3.

Writ granted.

*Lindsey,* 179 W.Va. 674, 677, 371 S.E.2d 602, 605 (1988) (" ... where a fundamental, constitutional right is involved and an equal protection challenge is made, the State's action is given strict scrutiny, and the State must advance a compelling state interest to uphold the discriminatory classification.").